SHORT RECORD
NO. 25-1354
FILED 03/03/2025

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

               Plaintiff,

      v.                                          Case No.  24-cr-50-jdp

STEVEN ANDEREGG,

               Defendant.

---

## NOTICE OF APPEAL

---

Notice is hereby given that the United States of America, the plaintiff in the above-captioned case, hereby appeals to the United States Court of Appeals for the Seventh Circuit from an order docketed in this case on February 13, 2025 (Doc. No. 73), granting the defendant's pretrial motion to dismiss Count 4 of the indictment, which charges that the defendant possessed at least one obscene visual depiction of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 1466A(b)(1), (d)(4).

Dated this 3rd day of March, 2025.

Respectfully submitted,

STEVEN J. GROCKI
Chief

By: /s/ William G. Clayman
William G. Clayman
Trial Attorney
Child Exploitation & Obscenity Section
Criminal Division
U.S. Department of Justice

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 3, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF System.

<u>/s/ William G. Clayman</u>
William G. Clayman

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                Plaintiff,

       v.                                 Case No. 24-cr-50-jdp

STEVEN ANDEREGG,

                Defendant.

## DOCKETING STATEMENT

The United States of America, by and through undersigned counsel, files this docketing statement pursuant to Seventh Circuit Rules 3(c) and 28(a).

1.      On May 15, 2024, a federal grand jury in the Western District of Wisconsin returned a four-count indictment charging defendant Steven Anderegg with production of obscene imagery depicting a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 1466A(a)(1), (d)(4); distribution of such material, in violation of 18 U.S.C. § 1466A(a)(1), (d)(1); transferring obscene material to a minor under the age of 16, in violation of 18 U.S.C. § 1470; and possession of obscene imagery depicting a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 1466A(b)(1), (d)(4). Doc. No. 2.

2.      Before trial, Anderegg moved to dismiss all four counts; to suppress evidence and for a *Franks* hearing; for in camera review of grand jury information; to

compel the government to provide copies of the charged imagery to the defense; and for a bill of particulars. Doc. Nos. 50-52. The government filed an omnibus response, Doc. No. 64, and Anderegg filed a reply, Doc. No. 68.

3.      On February 13, 2025, the district court filed an opinion and order granting Anderegg's motion to dismiss the possession count; denying as moot the motion for a bill of particulars; noting that the court had already ordered the government to provide a short list of images most relevant to the production and possession counts; and denying all other relief. Doc. No. 73.

4.      The district court had jurisdiction under 18 U.S.C. § 3231 because this is a federal criminal prosecution. The government filed a timely notice of interlocutory appeal from the district court's February 13, 2025 decision on March 3, 2025. *See* Fed. R. App. P. 4(b)(1)(B). This Court has jurisdiction over this interlocutory appeal under 18 U.S.C. § 3731.

Dated this 3rd day of March, 2025.

Respectfully submitted,

STEVEN J. GROCKI
Chief

By:
/s/ William G. Clayman
William G. Clayman
Trial Attorney
Child Exploitation & Obscenity Section
Criminal Division
U.S. Department of Justice

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 3, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF System.

<u>/s/ William G. Clayman</u>
William G. Clayman

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

                              Plaintiff,                         OPINION and ORDER

        v.
                                                                 24-cr-50-jdp
STEVEN ANDEREGG,

                              Defendant.

---

Defendant Steven Anderegg is charged with four counts relating to what the court will refer to as obscene virtual child pornography. Anderegg moves to dismiss each of the four counts, Dkt. 40 and Dkt. 41, to suppress the evidence gathered from two search warrants, Dkt. 39, for a *Franks* hearing, Dkt. 50, and for a few other items of miscellaneous relief.

Anderegg isn't charged with the production, distribution, or possession of child pornography as that term is used under federal law, because the charged images at issue aren't of real children. Rather, they were generated through Stable Diffusion, AI software that generates images in response to text prompts. The charges here rely on the theory that the images constitute obscenity, which generally lies beyond the scope of the First Amendment. *Roth v. United States*, 354 U.S. 476, 492 (1957). But the First Amendment generally protects the right to possess obscene material in the home, *Stanley v. Georgia*, 394 U.S. 557 (1969), so long as it isn't actual child pornography, *Osborne v. Ohio*, 495 U.S. 103, 111 (1990). These basic principles guide much of the analysis that follows.

The court will deny Anderegg's motions to suppress evidence from the search warrants, because the warrant application described the images and the context in which they were found with enough detail to establish probable cause for obscenity offenses. The court will dismiss

the possession-of-obscenity charge following *Stanley*, but it will deny the motions to dismiss the other counts for reasons explained below.

BACKGROUND

Through the National Center for Missing and Exploited Children's CyberTipline, law enforcement received tips from Instagram about a user sharing with a 15- or 16-year-old boy two AI-generated images of nude boys. The sharing occurred in early October 2023. A Wisconsin Department of Justice special agent investigated. The tips included an Instagram chat conversation between the user and the boy in which the user described how he created images using Stable Diffusion, software that generates images from text-based prompts.

After issuing an administrative subpoena to Charter Communications, law enforcement learned that the Internet Protocol (IP) address linked to the Instagram account activity was assigned to defendant Steven Anderegg. The United States Attorney sought a search warrant for the Instagram accounts associated with Anderegg, supported by an affidavit from the special agent; Magistrate Judge Stephen Crocker issued that warrant. *See* Dkt. 52-1.

Review of the Instagram accounts revealed a third apparently AI-generated image of naked boys, as well as sexually explicit chats with minors. The United States Attorney sought a second search warrant, this time for Anderegg's home in Holmen, Wisconsin, and his vehicles. This warrant was also supported by an affidavit from the special agent. *See* Dkt. 52-2. Magistrate Judge Crocker issued that warrant. *Id.*

Review of Anderegg's electronic devices revealed more than 13,000 AI-generated images, many of them alleged to be of children engaged in sexually explicit conduct. A federal grand jury returned an indictment for the following charges:

1. Production of at least one obscene image of a minor engaging in sexually explicit conduct (between Oct. 20 and Dec. 28, 2023); 18 U.S.C. § 1466A(a)(1) and (d)(1).

2. Distribution of at least one obscene image of a minor engaging in sexually explicit conduct (on October 7, 2023); 18 U.S.C. § 1466A(a)(1) and (d)(1).

3. Transfer of obscene matter to an individual under 16 (on October 7, 2023); 18 U.S.C. § 1470.

4. Possession of at least one obscene image of a minor engaging in sexually explicit conduct (between Oct. 20, 2023, and Feb. 22, 2024); 18 U.S.C. § 1466A(b)(1) and (d)(1).

Dkt. 2.

## ANALYSIS

### A. Motions to suppress

Anderegg moves to suppress the evidence gathered from both search warrants, contending that they did not establish probable cause of criminal activity. Anderegg argues that the warrant applications' description of the allegedly obscene images wasn't detailed enough for Magistrate Judge Crocker to properly determine whether the images were obscene. He also argues that the warrant applications didn't properly link the CyberTipline-reported Instagram account to him or his residence.

A search warrant is valid under the Fourth Amendment only if issued with probable cause. "To establish probable cause, a warrant application must contain facts that, given the nature of the evidence sought and the crime alleged, allow for a reasonable inference that there is a fair probability that evidence will be found in a particular place." *United States v. Roland*, 60 F.4th 1061, 1064 (7th Cir. 2023). "[P]robable cause is far short of certainty—it 'requires only a probability or substantial chance of criminal activity, not an actual showing of such

activity . . . .'" *United States v. Seiver*, 692 F.3d 774, 777 (7th Cir. 2012) (quoting *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)). It's "not a probability that exceeds 50 percent ('more likely than not'), either." *Id.* (quoting *Hanson v. Dane Cnty., Wis.*, 608 F.3d 335, 338 (7th Cir. 2010). This "is a flexible, common-sense, totality-of-the-circumstances standard." *United States v. Schenck*, 3 F.4th 943, 946 (7th Cir. 2021).

A reviewing court owes "great deference" to the probable cause conclusion of the judge who issued the search warrant, and the court must "uphold a finding of probable cause so long as the issuing judge had a substantial basis to conclude that the search was reasonably likely to uncover evidence of wrongdoing." *United States v. Reichling*, 781 F.3d 883, 886 (7th Cir. 2015) (quotation omitted), *cert. denied*, 577 U.S. 878 (2015).

### 1. Elements of obscenity

The warrant applications listed potential charges against Anderegg including production, possession, and distribution of obscene images of the sexual abuse of children, possession and distribution of child pornography, importation or transportation of obscene matters, and transfer of obscene matters to minors. Anderegg focuses on whether the warrant-application affidavits were specific enough to make a probable cause finding either (1) that the images were obscene; or (2) tying Anderegg's residence to the Instagram account.

The court starts with whether there was probable cause that the images were obscene. A preliminary question is whether search warrants in obscenity cases demand higher scrutiny than those in child pornography cases or other types of cases. The parties ultimately agree that the standard articulated under *New York v. P.J. Video, Inc.*, 475 U.S. 868 (1986), controls. Under *P.J. Video*, a "warrant authorizing the seizure of materials presumptively protected by the First Amendment may not issue based solely on the conclusory allegations of a police officer that

4

the sought-after materials are obscene." *Id.* at 873. Rather, a supporting affidavit must "set[] forth specific facts" so that "the issuing magistrate may 'focus searchingly on the question of obscenity.'" *Id.* at 873–74 (quoting *Marcus v. Search Warrants of Prop. at 104 E. Tenth St., Kansas City, Mo.*, 367 U.S. 717, 732 (1961)). The probable cause standard itself remains unchanged from the ordinary standard. *Id.* at 875 ("an application for a warrant authorizing the seizure of materials presumptively protected by the First Amendment should be evaluated under the same standard of probable cause used to review warrant applications generally").

Anderegg argues that search warrant applications didn't give enough detail about the images for Magistrate Judge Crocker to "focus searchingly on the question of obscenity." To be considered obscene, works must:

1. when taken as a whole, appeal to the prurient interest in sex;

2. portray sexual conduct in a patently offensive way; and

3. when taken as a whole, not have serious literary, artistic, political, or scientific value.

*Miller v. California*, 413 U.S. 15, 24 (1973).

The warrant applications did not include the images themselves; they relied on the special agent's description of three transmitted images. Anderegg contends that the best practice would be for the government to produce the images along with the warrant application. *See also United States v. Griesbach*, 540 F.3d 654, 656 (7th Cir. 2008) ("The failure of the state investigator to submit the image itself with her affidavit to the state judge is the strangest thing about this case . . . ."). But there is no *requirement* that the judge considering the warrant see the material firsthand. *P.J. Video*, 475 U.S. at 874 n.5 ("[W]e have never held that a magistrate must personally view allegedly obscene films prior to issuing a warrant authorizing their seizure.").

So the issue boils down to whether the special agent's affidavits allowed Magistrate Judge Crocker to "focus searchingly on the question of obscenity." The special agent's affidavits described the three images as follows:

> This image depicted what appeared to be a prepubescent juvenile male kneeling on a blue blanket in a wooded area. The male was partially clothed, only wearing a baseball cap and white underwear. The male had his erect penis exposed through the opening in his underwear. In the background of the image were other clothed, pre or young pubescent children. The male was posed in a manner that made his erect penis the focal point of the image. This image appears to be computer-generated content.

Dkt. 52-1, at 11.

> This image depicted what appeared to be a different prepubescent juvenile male kneeling on a blue blanket in a wooded area leaning back on his hands with his legs spread far apart exposing his erect penis. The male had a blue cloth draped across his stomach, but other than that, was completely nude. There was a partially clothed juvenile female with brown hair kneeling to the left of the male looking over his shoulder at him. The male in this image was posed in a manner that made his penis the focal point of the image. This image appears to be computer-generated content.

*Id.*

> This third image depicted what appeared to be three prepubescent boys standing in a row in a wooded area. The boys are all shirtless and wearing tiny shorts. The boy on the left has his erect penis sticking out of his shorts. The boy on the right has his shorts zipped down to expose his penis, which the boy in the middle appears to be gripping with his hand. The boys are clearly intended to be prepubescent based on their small statures, underdeveloped physiques, and youthful facial features.

Dkt. 52-2, at 34–35.

These descriptions are succinct but they are not conclusory. Anderegg argues that the affidavits supporting the warrant in *P.J. Video* contained more detail about sex acts in the movie

6

that was at issue there. But at least part of the reason for that is that there's less material here: rather than the 90-minute movies at issue in *P.J. Video*, the material here is three images.

Anderegg states that "from those vague descriptions, we don't even have a sex act being displayed. We have nudity, which is not obscene . . . ." Dkt. 52, at 32. He also states, "All the court had was that in each image a minor's penis was exposed—erect in two, and gripped in a third." *Id.* at 38. But this is not mere nudity. The "lewd exhibition of the genitals" is specifically cited in *Miller's* list of examples of material that could be regulated as obscenity. 413 U.S. at 25; *see also, e.g.*, *United States v. Salcedo*, 924 F.3d 172, 179 (5th Cir. 2019) (concluding that image prominent displaying adult erection "was a patently offensive, lewd exhibition of the genitals."); *United States v. Rogers*, 474 F. App'x 463, 470 (7th Cir. 2012) ("A jury could reasonably find that the picture [of an adult's erect penis protruding out of a pair of unzipped pants being held by a hand] represented or described a lewd exhibition of his genitals."). That the penises are erect or gripped moves the images beyond mere nudity. And the special agent's description that the images are of prepubescent children is another factor that supports the conclusion that the display of genitals would be prurient and patently offensive. *See Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 240 (2002) ("[W]e may assume that the apparent age of persons engaged in sexual conduct is relevant to whether a depiction offends community standards. Pictures of young children engaged in certain acts might be obscene where similar depictions of adults, or perhaps even older adolescents, would not."). The affidavits' descriptions of the images were enough for Magistrate Judge Crocker to conclude that there was a fair probability that the pictures depicted patently offensive sexual conduct.

Anderegg also argues that the descriptions weren't enough for Magistrate Judge Crocker to adequately consider whether the images had serious artistic value. Anderegg supports his

argument by juxtaposing works by well-known artists with AI-generated photo-realistic versions of those works (William-Adolphe Bouguereau's *The Birth of Venus*, Balthus's *The Guitar Lesson*, and a photograph of a nude boy by Robert Mapplethorpe). Then, Anderegg proposes short written descriptions of those images, similar in detail to the special agent's descriptions of the images at issue here. Anderegg argues, "All of the serious value is lost when the description is so vague and the image isn't shown." Dkt. 52, at 31.

The court is not persuaded by this argument about artistic value. The warrant application did not have to eliminate any possibility that the transmitted images lacked serious artistic value. The probable cause standard requires only enough to make it "reasonably likely" that the images lacked serious artistic value. Law enforcement isn't required to draft a warrant application that establishes illegality to a dead certainty.

In this case, the context of the images tends to negate the possibility of serious artistic value. The search warrant wasn't directed to an art gallery, a movie theater, or even a private collection of art. The targeted Instagram user created the images after soliciting ideas from a minor during an online chat. Anderegg states that communicating with a 15-year-old "is not illegal—true, it's not a good idea, but it's not illegal." Dkt. 52, at 35. But Magistrate Judge Crocker could use that context in his calculus of the artistic value of the images; the context shows a strong likelihood that Anderegg wasn't using the images for any artistic or scientific purpose. *See Rogers*, 474 F. App'x at 470 ("Rogers did not send the image to engage Emily in scientific discussion on human anatomy or an academic discourse on teenage sexual activity."); *see also Free Speech Coal.*, 535 U.S. at 257–58 ("The Court has recognized that pandering may be relevant, as an evidentiary matter, to the question whether particular materials are obscene."). The court rejects Anderegg's argument that the warrants should be quashed because

8

the warrant applications provided no information about whether the images lacked serious artistic value.

Anderegg doesn't explicitly argue the "appeals to the prurient interest in sex" element of obscenity, but for the sake of completeness the court will address it. The court must consider the work as a whole and it may also consider the context in which it was created or distributed. *Cf. id.* at 258 ("Where a defendant engages in the 'commercial exploitation of erotica solely for the sake of their prurient appeal,' the context he or she creates may itself be relevant to the evaluation of the materials." (citation omitted) (quoting *Ginzburg v. United States*, 383 U.S. 463, 466 (1966)). Here, the description of the images' focus on boys' genitals, other children peering at the boys' genitals (and in one case gripping another boy's penis), and the context in which the Instagram user created and shared them with a minor are sufficient to meet the probable cause requirement on this element. *See Rogers*, 474 F. App'x at 469 ("Rogers' attempt to foist upon Emily, an individual he believed to be a thirteen-year-old minor, sexually explicit material that she legally could not consent to receive constitutes a prurient interest."). The court will deny this portion of Anderegg's motion to suppress.

## 2.  Nexus to Anderegg's home

Anderegg also moves to suppress evidence gathered from the second search warrant, the one for Anderegg's residence. He contends that the warrant did not tie the evidence sought with the place to be searched. *See Gates* 462 U.S. at 238 ("[T]here [must be] a fair probability that contraband or evidence of a crime will be found in a particular place."). The Instagram account (registered to an unknown person) sharing the AI images with a minor did so on October 7, 2023, from a particular IP address. There was a login to that same account using the same IP address on October 1, 2023.

Law enforcement requested an administrative subpoena be issued to Charter Communications for records about the use of that IP address. But curiously, law enforcement requested the customer using that IP address at certain times on October 2 and October 8, 2023, not October 1 and October 7, 2023. Charter responded that Anderegg was assigned that IP address for the times requested on October 2 and October 8; Charter also listed his Holmen address, the place targeted by the second search warrant.

Anderegg argues that the information from Charter isn't enough to tie him to the IP address because IP addresses are dynamic and can change from day to day or even minute to minute. The court acknowledges that IP addresses can be dynamic, but Anderegg's IP address appears to have been stable during the dates at issue. Anderegg was assigned the IP address on October 2 and October 8, so there's at least a fair probability that he was assigned that same address on October 1 and October 7 too. And it wasn't just the IP address tying Anderegg to the Instagram account. The warrant application indicated that a second Instagram account with a similar username (both containing "dhyana") was registered to a person with Anderegg's phone number. And in its CyberTipline report, Meta (which owns Instagram) stated that Anderegg's registered Facebook and Instagram accounts were "linked by device and/or IP address" to the account that sent the images to the minor. Dkt. 52-2, at 31. Given the common-sense approach judges are to take in determining probable cause, Magistrate Judge Crocker had ample reason to conclude that the account was Anderegg's. The court will deny Anderegg's motion to suppress.

### 3. Request for *Franks* hearing

Anderegg filed a separate motion to suppress and requesting a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), contending that the government falsely represented that the

persons depicted in the images described in the warrant are prepubescent minors. Anderegg's case for a *Franks* hearing is based solely on the images and the special agent's descriptions of them.

> Anderegg describes the issue as follows:

> > Here, the affidavit described a "prepubescent juvenile male"— that could mean a minor from ages 5–12. Yet, the image doesn't show anything close to that. It shows a *very* young face and a *very* mature body. Again, the body has strong muscular development, it has terminal hair and other body hair. All of which takes the figure to be anything but prepubescent. How old is the subject? No one knows because it's AI-generated so it exists outside of time—there's no birthday. It's a hodgepodge of parts, a young face and an older body . . . . It's AI-generated so, it's just not something that could be Tanner Scaled, and it's certainly not something that could be accurately described as "prepubescent."

Dkt. 50, at 3 (emphases in original).

> To establish his entitlement to a *Franks* hearing, Anderegg's burden is to make a "substantial preliminary showing" of (1) a material falsity or omission from the warrant applications that would alter the probable cause determination; and (2) a deliberate or reckless disregard for the truth. *United States v. Glover*, 755 F.3d 811, 820 (7th Cir. 2014) (internal quotation omitted). "*Franks* hearings are rarely held because these elements are hard to prove." *United States v. Woodfork*, 999 F.3d 511, 516 (7th Cir. 2021).

> Anderegg argues that the special agent's characterization of the main subjects of the images at issue as prepubescent is a material falsity because it's not possible to assign an age to the AI figures in the images given their features, and that Magistrate Judge Crocker would not have issued the warrants if the images were of pubescent minors.

> The court disagrees on both points. First, the age of the figures is not necessarily critical to the issue of obscenity because lewd exhibition of the genitals can be obscene regardless the

age of the figure portrayed. *See, e.g.*, *Salcedo*, 924 F.3d at 179; *Rogers*, 474 F. App'x at 470. And some of the charges don't depend on the age of the subjects featured in allegedly obscene material—notably the transfer of obscene material to minors. The warrants would have issued even had the word prepubescent been omitted.

Second, the court has reviewed the images, and the court sees nothing to suggest deliberate or reckless disregard for the truth in law enforcement's describing the main figures in those images as prepubescent. Anderegg concedes that the images "show a *very* young face." Dkt. 50 at 3 (emphasis in original). The court agrees with that characterization of the faces, which are a primary indication of age.

Anderegg contends that the figures have "a *very* mature body." He describes the full figure as "a hodgepodge of parts, a young face and an older body," and he states that "the images [don't] show anything close to" prepubescent bodies. *Id.* (emphasis in original). The court agrees that the figures are an amalgam of features, with some parts apparently older than others. But ultimately the court disagrees with Anderegg's conclusion that the figures cannot fairly be described as prepubescent.

The AI images are photorealistic in the sense that they are rendered in a style meant to look like photographs, as opposed to say a painting or drawing. But they are in other ways slightly unreal, as AI-generated images sometimes are. For instance there are some AI artifacts, such as the blurriness in the part of the third image where one boy appears to grip another's penis. And the figures are, as Anderegg says, kind of hybrids with some body parts not precisely matching the figure's faces: the size of boys' erections, the musculature, and presence of some body and pubic hair. But it isn't accurate to characterize the figures as a "hodgepodge of parts." The figures aren't a Frankenstein mashup of child and fully adult parts. The bodies may have

12

somewhat more musculature than one would expect of a prepubescent boy, but the bodies are all slender and youthful. The figures are rendered in a cohesive, realistic looking way despite some incongruities. The court concludes that Anderegg has not made a substantial preliminary showing of any material falsity or omission in the agent's description of the images or that the agent deliberately or recklessly disregarded the truth. The court will deny Anderegg's motion for a *Franks* hearing.

## B. Motions to dismiss

### 1. Counts 2 and 3

Anderegg moves to dismiss Count 2 (distribution of an obscene image of a minor) and Count 3 (transfer of obscene matter to a person under 16) on the ground that the images that Anderegg is accused of sending are not obscene as a matter of law.

Anderegg does not ground his motion in a particular Federal Rule of Criminal Procedure. There is no mechanism for summary judgment as is applied in the civil context. Rule 29 motions are ordinarily brought after the government closes its evidence or after the close of all the evidence. Federal Rule of Criminal Procedure 12(b)(1) states, "A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." But "[a] motion to dismiss is not intended to be a 'summary trial of the evidence.'" *United States v. Yasak*, 884 F.2d 996, 1001 (7th Cir. 1989).

Nonetheless, the court takes Anderegg's argument here to be that no trial is required because the court can rule as a matter of law that the images are not obscene; he states "there is no way to consider the images that Anderegg allegedly distributed . . . and find that they are obscene materials." Dkt. 52, at 41. The government grants that "[i]t is perhaps possible that certain imagery—for example, a picture of an adult woman in a bathing suit swimming in the

13

ocean—would be so obviously non-obscene that a district court could dismiss an obscenity count predicated on such an image." Dkt. 64, at 29 n.12.

The court agrees that it could dismiss a count regarding an obviously non-obscene image. *See Jenkins v. Georgia*, 418 U.S. 153, 161 (1974) ("[i]t would be wholly at odds with . . . *Miller* to uphold an obscenity conviction based upon a defendant's depiction of a woman with a bare midriff"). But the court will not grant Anderegg's motion to dismiss regarding the three AI pictures transmitted to a 15-year-old. Having reviewed the images, the court concludes that the three images are not obviously outside the realm of the obscene. The court agrees with the special agent's affidavits that the boys' erect penises are the focal point of the images. Other children are depicted as gazing at those erections, and in one image, gripping another's penis. A reasonable jury could find these images to be obscene. *See, e.g.*, *Salcedo*, 924 F.3d at 179; *Rogers*, 474 F. App'x at 470. It's simply not the court's role at this point of the proceedings to decide that issue for the jury. The court will deny Anderegg's motion to dismiss Counts 2 and 3.

### 2. Counts 1 and 4

Anderegg moves to dismiss Count 1, production of an obscene image of a minor engaging in sexually explicit conduct, 18 U.S.C. § 1466A(a)(1), and Count 4, possession of an obscene image of a minor engaging in sexually explicit conduct, 18 U.S.C. § 1466A(b)(1). With this motion, Anderegg makes a constitutional challenge to section § 1466A, which was enacted as part of the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108–21, 117 Stat. 650 (2003).

Anderegg contends that under *Stanley*, § 1466A is unconstitutional as applied to him because he has the right to possess and produce obscene material in his own home. 394 U.S.

at 568 ("We hold that the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime."). *Stanley* is an exception to the general rule that obscene material isn't protected by the First Amendment:

> Whatever may be the justifications for other statutes regulating obscenity, we do not think they reach into the privacy of one's own home. If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch. Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds.

394 U.S. at 565. Despite *Stanley*'s sweeping language, it doesn't extend to *every* type of obscene material in the home. Under *Osborne*, the possession of child pornography—obscene and non-obscene alike—can be criminalized.

The government contends that the *Stanley* exception doesn't apply to the possession and production counts in this case because *Stanley* involved obscene material involving *adults*. It argues that "the paramount importance of protecting minors from sexual exploitation entitles the government 'to greater leeway in the regulation of pornographic depictions of children.'" Dkt. 64, at 13 (quoting *New York v. Ferber*, 458 U.S. 747, 756 (1982)). Possession of child pornography in one's own home can be criminalized despite *Stanley* because of the government's compelling interest "in 'safeguarding the physical and psychological well-being of a minor.'" *Osborne*, 495 U.S. at 109 (quoting *Ferber*, 458 U.S. at 756–57).

The government argues that § 1466A is constitutional as it applies to production and possession of obscene virtual child pornography because *Stanley's* exception is limited to obscene materials involving adults and because Congress has other compelling interests for banning production and possession of this material. The government gives those rationales as follows:

15

- "concern that offenders will use AI-generated obscene material depicting children in an effort to 'groom' actual minors into engaging in sexual acts."

- "concern that an offender's engagement with AI-generated obscene material depicting children will normalize the behavior and will, in turn, create increasing risk for actual children."

- "eradicating the market for materials showing the sexual exploitation of children."

- "rapid developments in AI technology are making it increasingly difficult . . . to know whether an obscene image depicts a real child or an AI-generated one . . . . creat[ing] the very real, very present risk that offenders engaged with material showing actual children will be immune from prosecution . . . . the photorealistic nature of GenAI material will adversely affect critical child-rescue efforts, as rescuers search for children who do not, in fact, exist."

Dkt. 64, at 15, 17–20.

The government's attempt to limit *Stanley* is inconsistent with *Free Speech Coalition*, 535 U.S. at 240. In *Free Speech Coalition*, the Supreme Court considered an overbreadth challenge to a precursor to the PROTECT Act, the Child Pornography Prevention Act of 1996, prohibiting child pornography that did not depict an actual child. 535 U.S. 234. The Court noted that *Ferber* "distinguished child pornography from other sexually explicit speech because of the State's interest in protecting the children exploited by the production process." The production of *virtual* child pornography doesn't directly harm children, but Congress "decided the materials threaten children in other, less direct, ways." *Id.* at 240, 241. The Court concluded that the ban on virtual pornography violated the First Amendment, for two reasons: (1) it prohibited non-obscene expression, including material potentially having significant artistic value; and (2) the government's proffered reasons (similar to the rationales the government gives above in support of §1466A) for restricting all virtual child pornography were unpersuasive.

16

The Court rejected the rationale that offenders might groom children with virtual pornography by stating, "There are many things innocent in themselves, however, such as cartoons, video games, and candy, that might be used for immoral purposes, yet we would not expect those to be prohibited because they can be misused." *Id.* at 251.

The government's proffered rationale here that an offender's use of AI-generated material would "normalize" that behavior and increase risk to children is substantially similar to the government's argument in *Free Speech Coalition* that virtual child pornography might "whet the appetite" of offenders. The Court considered that rationale and stated, "The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it." *Id.* at 253. The Court also quoted *Stanley* for the proposition that Congress "'cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts.'" *Id.* (quoting 394 U.S. at 566). It concluded that "The Government has shown no more than a remote connection between speech that might encourage thoughts or impulses and any resulting child abuse." *Id.*

*Free Speech Coalition* also rejected the rationale that criminalizing virtual child pornography was necessary to achieve the objective of eradicating the market for all child pornography. *Id.* at 254 ("We need not consider where to strike the balance [in suppressing speech related to a crime] in this case, because here, there is no underlying crime at all."). This rationale dovetails with the government's final rationale here, about modern-day virtual child pornography becoming so photorealistic that its existence hampers the ability of law enforcement to tell whether children in the images are real and to garner child pornography convictions necessitated on the children being real. The government made similar arguments in *Free Speech Coalition*, with the Court making two points. First, that "[t]he Government may

17

not suppress lawful speech as the means to suppress unlawful speech. Protected speech does not become unprotected merely because it resembles the latter." *Id.* at 255. Second, it rejected the government's argument about the indistinguishability of virtual child pornography from that involving real children, reasoning, "If virtual images were identical to illegal child pornography, the illegal images would be driven from the market by the indistinguishable substitutes. Few pornographers would risk prosecution by abusing real children if fictional, computerized images would suffice." *Id.* at 254.

The government urges the court to limit *Stanley* and *Free Speech Coalition* to their specific contexts, and to apply *Osborne*, which approved the criminal prohibition of the possession of child pornography. The government argues that "the in-home possession and production of obscene material involving children is much more like *Osborne* than it is *Stanley*." Dkt. 64, at 16. But *Osborne* isn't on point because the images here aren't of real children. Current § 1466A narrowed the scope of prohibited material to *obscene* virtual child pornography. That avoids the overbreadth problem identified in *Free Speech Coalition*. But it doesn't address the reasoning of *Stanley*, which relies on the importance of freedom of thought and the sanctity of the home.

The government attempts to overcome *Stanley's* reasoning with the additional element of the federal charge that the images "have been shipped or transported in interstate or foreign commerce or were produced using materials that had been shipped or transported in interstate or foreign commerce." Dkt. 64, at 22. It states that "the law here reflects Congress's assessment that the defendant's possession of obscene images produced on his foreign-made laptop has a substantial effect on interstate commerce." *Id.*

The jurisdictional element doesn't meaningfully distinguish this case from *Stanley*. The upshot of the government's argument is that the First and Fourth Amendments protect private

possession of obscene materials, but only so long as they weren't produced using materials moved in interstate or foreign commerce. But the obscene materials in *Stanley* (reels of eight-millimeter film) almost certainly moved in interstate commerce too. (The jurisdictional element was not at issue in *Stanley*, because the case originated in state court and involved a state obscenity charge.) If the jurisdictional element were enough to overcome *Stanley*, *Stanley* would be a dead letter. *See also United States v. Ostrander*, 114 F.4th 1348, 1361 (11th Cir. 2024) ("But the reasoning of *Osborne* does not apply to virtual child pornography because there are no children victimized by these images. *Free Speech Coal.*, 535 U.S. at 250. . . . Therefore, the First Amendment protects the private possession in one's own home of obscene material depicting virtual minors, so long as no real children are victimized. *Id.* at 256.").

The court concludes that, following *Stanley* and *Free Speech Coalition*, the court must dismiss Count 4, the possession charge under § 1466A(b), because it is unconstitutional as applied to Anderegg's private possession of obscene virtual child pornography.

That leaves Count 1, the production charge under § 1466A(a). The *Stanley* decision explicitly discussed in-home possession only, but the Court's discussion of the First Amendment right to privacy in one's home could readily be extended to homemade production of obscene material too. Criminalizing the drawing of an obscene picture in one's own home arguably isn't compatible with *Stanley's* privacy analysis. "[Stanley] is asserting the right to read or observe what he pleases—the right to satisfy his intellectual and emotional needs in the privacy of his own home. He is asserting the right to be free from state inquiry into the contents of his library." *Stanley*, 394 U.S. at 565; *see also Ostrander,* 114 F.4th at 1362–63 ("[Defendant] has not demonstrated any realistic indication that the statute would actually be used to prosecute someone simply for making an obscene doodle in the confines of his own bedroom,

in his home. . . . The legitimate sweep of this statute is not targeting obscene doodles and legitimate works of art in progress.").

But the court will decline to extend *Stanley* to the production of obscene virtual child pornography charged here. *Stanley* was a narrow holding written against the backdrop of the longstanding general rule that obscenity is unprotected speech that the government may regulate or prohibit. *See Roth*, U.S. at 492. *Stanley* doesn't mention production, but focuses solely on possession. And even that right isn't absolute after cases such as *Osborne*, allowing the restriction of obscene material if it is child pornography. If broader protection for production of obscenity is implicit in *Stanley*, the Supreme Court hasn't recognized it over the subsequent decades. The court concludes that the private production of obscenity does not fall within the zone protected by *Stanley*. The motion to dismiss Count 1 is denied.

## C.  Other motions

Anderegg moves for in camera review of the grand jury instructions to ensure that it was properly instructed on obscenity. But this argument is premised on Anderegg's position that the images supporting Counts 2 and 3 are non-obscene as a matter of law. The court has already rejected that argument. There isn't any reason to think that the grand jury was improperly instructed on the well-known elements of obscenity. The court will deny this motion.

Anderegg moves for a bill of particulars regarding Counts 1 and 4, Dkt. 43. The government contends that Anderegg is not entitled to a bill of particulars but that it will voluntarily provide him with one. The court will deny this motion as moot.

Anderegg also moves to compel production of the images that are the basis for Counts 1 and 4. Dkt. 51. The court has already ordered the government to produce a shortlist of the images most relevant to those counts. Dkt. 71.

ORDER

IT IS ORDERED that:

1.  Defendant Steven Anderegg's motion to suppress, Dkt. 39, is DENIED.

2.  Defendant's motion for a *Franks* hearing, Dkt. 50, is DENIED.

3.  Defendant's motion to dismiss Counts 2 and 3, Dkt. 41, is DENIED.

4.  Defendant's motion to dismiss Counts 1 and 4, Dkt. 40, is GRANTED in part.

5.  Defendant's motion for review of the grand jury instructions, Dkt. 42, is DENIED.

6.  Defendant's motion for a bill of particulars, Dkt. 43, is DENIED as moot.

Entered February 13, 2025.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

ECF Western District of Wisconsin                    https://wiwd-ecf.sso.dcn/cgi-bin/DktRpt.pl?129604401663735-L_1_0-1

Case: 3:24-cr-00050-jdp    Document #: 75-3    Filed: 03/03/25    Page 1 of 10
Case: 25-1354    Document: 1-1    Filed: 03/03/2025    Pages: 36
AMB_CONFLICT, INTERLOCUTORY_APPEAL, JF, PROTECTIVE_ORDER, SINGLE_DEFT,

# U.S. District Court
## Western District of Wisconsin (Madison)
## CRIMINAL DOCKET FOR CASE #: 3:24-cr-00050-jdp All Defendants

Case title: USA v. Steven Anderegg                    Date Filed: 05/15/2024

<u>Plea Filings</u>                                                 <u>Sentencing Filings</u>

---

Assigned to: District Judge James D.
Peterson
Referred to: Magistrate Judge Stephen L.
Crocker

**Defendant (1)**

**Steven Anderegg**                    represented by    **Joseph Aragorn Bugni**
                                                         Hurley Burish, S.C.
                                                         33 E. Main Street, Ste. 400
                                                         P.O. Box 400
                                                         Madison, WI 53701-1528
                                                         608-257-0945
                                                         Fax: 608-257-5764
                                                         Email: jbugni@hurleyburish.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Designation: Retained*

                                                         **Elizabeth Ann Blair**
                                                         Federal Defender Services of Wisconsin
                                                         22 East Mifflin Street
                                                         Suite 1000
                                                         Madison, WI 53703
                                                         608-260-9900
                                                         Email: elizabeth_blair@fd.org
                                                         *TERMINATED: 05/21/2024*
                                                         *Designation: Public Defender or*
                                                         *Community Defender Appointment*

**Pending Counts**                                    **Disposition**

18:1466.F SELLING/TRANSFERRING
OBSCENE MATTER
(1-2)

18:1470.F TRANSFER OF OBSCENE
MATERIALS TO MINORS
(3)

18:1466.F SELLING/TRANSFERRING
OBSCENE MATTER
(4)

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

**Plaintiff**

| **United States of America** | represented by | **William G. Clayman**<br>DOJ-Crm<br>U.S. Department of Justice<br>Child Exploitation and Obscenity Section<br>1301 New York Avenue, NW, Ste 11th Floor<br>Washington, DC 20005<br>202-514-0040<br>Email: william.clayman@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Government*<br><br>**Ross Goldman**<br>U.S. DOJ, Child Exploitation and Obscenity Section<br>1301 New York Ave., 11th Floor<br>Washington, DC 20530<br>202-532-4153<br>Email: ross.goldman@usdoj.gov<br>*ATTORNEY TO BE NOTICED* |
|---|---|---|

| Date Filed | # | Docket Text |
|---|---|---|
| 05/15/2024 | 1 | JS-45 Criminal Cover Sheet as to Steven Anderegg. (rks) (Entered: 05/15/2024) |
| 05/15/2024 | 2 | INDICTMENT as to Steven Anderegg (1) counts 1-2, 3, 4. (rks) (Entered: 05/15/2024) |

| 05/15/2024 | 3 | Warrant Issued as to Defendant Steven Anderegg. Delivered to USMS for service. (Sealed Document) (rks) (Entered: 05/15/2024) |
|---|---|---|
| 05/17/2024 | | Arrest of Steven Anderegg. Case unsealed. (jat) (Entered: 05/17/2024) |
| 05/17/2024 | | Hearing set as to defendant Steven Anderegg. Initial Appearance set for 5/17/2024 at 02:00 PM. (lam) (Entered: 05/17/2024) |
| 05/17/2024 | 4 | Minute Entry for proceedings held before Magistrate Judge Andrew R. Wiseman: Initial Appearance as to Steven Anderegg held on 5/17/2024. (FTR) [:03] (lam) (Entered: 05/17/2024) |
| 05/17/2024 | | Hearing set as to defendant Steven Anderegg. Arraignment and Detention Hearing set for 5/22/2024 at 01:00 PM. (lam) (Entered: 05/17/2024) |
| 05/17/2024 | 5 | ** TEXT ONLY ORDER ** Pursuant to Rule 5(f) of the Federal Rules of Criminal Procedure, the court, with both the prosecutor and defense counsel present, confirms the government's obligation to disclose favorable evidence to the accused under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, and orders it to do so. Favorable evidence under *Brady* need have only some weight and includes both exculpatory and impeaching evidence. Failure to produce such evidence in a timely manner may result in sanctions, including, but not limited to, adverse jury instructions, dismissal of charges, and contempt proceedings. Signed by Magistrate Judge Andrew R. Wiseman on 5/17/2024. (lam) (Entered: 05/17/2024) |
| 05/20/2024 | 6 | Government's Brief in Support of Detention by United States of America as to Steven Anderegg. (Clayman, William) (Entered: 05/20/2024) |
| 05/21/2024 | 7 | Notice of Attorney Appearance: Joseph Aragorn Bugni appearing for Steven Anderegg. (Bugni, Joseph) (Entered: 05/21/2024) |
| 05/21/2024 | 8 | Letter *Requesting Continuance* by Steven Anderegg. (Bugni, Joseph) Modified on 5/21/2024 (voc). (Entered: 05/21/2024) |
| 05/21/2024 | 9 | ** TEXT ONLY ORDER ** ORDER granting 8 Letter Requesting Continuance as to Steven Anderegg. The May 22, 2024 hearing is STRUCK. The court will re-set the hearing after obtaining additional input from both sides. Signed by Magistrate Judge Stephen L. Crocker on 5/21/2024. (voc) (Entered: 05/21/2024) |
| 05/21/2024 | | Attorney update in case as to Steven Anderegg. Attorney Elizabeth Ann Blair terminated. Attorney Joseph Bugni filed Appearance, 7 . (jat) (Entered: 05/21/2024) |
| 05/23/2024 | 10 | Warrant Returned Executed as to Steven Anderegg.(Sealed) (voc) (Entered: 05/23/2024) |
| 05/24/2024 | 11 | Unopposed Motion for Protective Order by United States of America as to Steven Anderegg. (Attachments: # 1 Text of Proposed Order) (Clayman, William) (Entered: 05/24/2024) |
| 05/28/2024 | 12 | Protective **ORDER** Governing Discovery. Signed by Magistrate Judge Stephen L. Crocker on 5/28/2024. (nln) (Entered: 05/28/2024) |

| 05/31/2024 | | Arraignment and Detention Hearing set as to defendant Steven Anderegg for 6/14/2024 at 10:30 AM. (jat) (Entered: 05/31/2024) |
|---|---|---|
| 06/04/2024 | 13 | Government Discovery Letter by William G. Clayman on behalf of United States of America as to Steven Anderegg (Clayman, William) (Entered: 06/04/2024) |
| 06/06/2024 | | Arraignment and Detention Hearing reset as to defendant Steven Anderegg to accommodate the court's calendar. Arraignment and Detention Hearing reset for 6/13/2024 at 10:00 AM. (jat) (Entered: 06/06/2024) |
| 06/11/2024 | 14 | Pretrial Services Report as to Steven Anderegg (Sealed) (slr) (Entered: 06/11/2024) |
| 06/12/2024 | 15 | Brief in Opposition by Steven Anderegg *Memorandum in Support of Bond* (Bugni, Joseph) (Entered: 06/12/2024) |
| 06/13/2024 | 16 | Minute Entry for proceedings held before Magistrate Judge Stephen L. Crocker: Arraignment and Detention Hearing held on 6/13/2024: Not Guilty plea entered re: Steven Anderegg (1) Count 1-2,3,4. Defendant detained. (Court Reporter FTR.) (voc) (Entered: 06/13/2024) |
| 06/13/2024 | 17 | Order of Detention as to Steven Anderegg. Signed by Magistrate Judge Stephen L. Crocker on 6/13/2024. (voc) (Entered: 06/13/2024) |
| 07/10/2024 | | Hearing set as to defendant Steven Anderegg. Release Hearing set for 7/12/2024 at 09:00 AM by Zoom. (jat) (Entered: 07/10/2024) |
| 07/10/2024 | 18 | Government Discovery Letter by William G. Clayman on behalf of United States of America as to Steven Anderegg (Clayman, William) (Entered: 07/10/2024) |
| 07/11/2024 | 19 | Pretrial Services Report - Addendum as to Steven Anderegg (Sealed) (slr) (Entered: 07/11/2024) |
| 07/11/2024 | 20 | Sealed Document by USA as to Steven Anderegg *Government's Supplemental Brief in Support of Detention* (Sealed) (Clayman, William) (Entered: 07/11/2024) |
| 07/11/2024 | 21 | Motion to Seal *20 the Government's Supplemental Brief in Support of Detention* by United States of America as to Steven Anderegg. (Clayman, William) (Entered: 07/11/2024) |
| 07/11/2024 | 22 | ** TEXT ONLY ORDER ** ORDER granting 21 Motion to Seal as to Steven Anderegg (1). Signed by Magistrate Judge Stephen L. Crocker on 7/11/24. (jat) (Entered: 07/11/2024) |
| 07/12/2024 | 23 | Minute Entry for proceedings held before Magistrate Judge Stephen L. Crocker: Release Hearing as to Steven Anderegg held on 7/12/2024. Defendant released on conditions. (JLD) [:20] (lam) (Entered: 07/12/2024) |
| 07/12/2024 | 24 | ** TEXT ONLY ORDER ** At a July 12, 2024 9:00 a.m. Zoom hearing, the court denied the government's motion to detain defendant and entered a release order. The court gave the government until 10:30 a.m. CDT this same morning to file an appeal of this decision. Absent a timely appeal, the release order will go into effect. Judge Peterson will hold a Zoom hearing today on any appeal. Defendant has waived his personal participation in any such hearing. Signed by Magistrate Judge Stephen L. Crocker on 7/12/24. (jat) (Entered: 07/12/2024) |

ECF Western District of Wisconsin          https://wiwd-ecf.sso.dcn/cgi-bin/DktRpt.pl?129604401663735-L_1_0-1

Case: 3:24-cr-00050-jdp     Document #: 75-3     Filed: 03/03/25     Page 5 of 10
Case: 25-1354     Document: 1-1     Filed: 03/03/2025     Pages: 36

| 07/12/2024 | 25 | **ORDER** Setting Conditions of Release re: Steven Anderegg. (not signed by defendant and third-party custodian) (<u>Sealed</u>) Signed by Magistrate Judge Stephen L. Crocker on 7/12/24. (jat) (Entered: 07/12/2024) |
|---|---|---|
| 07/12/2024 | 26 | **ORDER** Setting Conditions of Release - Redacted re: Steven Anderegg (unsigned). Signed by Magistrate Judge Stephen L. Crocker on 7/12/24. (jat) (Entered: 07/12/2024) |
| 07/12/2024 | 27 | Appeal of Magistrate Judge Decision to District Court re 26 Order Setting Conditions of Release - Redacted by United States of America as to Steven Anderegg. (Clayman, William) (Entered: 07/12/2024) |
| 07/12/2024 | | Set Deadlines re Motion in case as to Steven Anderegg 27 Appeal of Magistrate Judge Decision to District Court re 26 Order Setting Conditions of Release - Redacted. Release Hearing set for 7/12/2024 at 01:00 PM by Zoom. (jat) (Entered: 07/12/2024) |
| 07/12/2024 | 28 | Brief in Opposition by Steven Anderegg re: 27 Appeal of Magistrate Judge Decision to District Court re 26 Order Setting Conditions of Release - Redacted (Bugni, Joseph) (Entered: 07/12/2024) |
| 07/12/2024 | 29 | **\*\* TEXT ONLY ORDER \*\***<br>For the reasons stated at the videoconference hearing, the government's appeal of Judge Crocker's release order is DENIED. The release order, Dkt. 25 , is AFFIRMED. Signed by District Judge James D. Peterson on 7/12/24. (jat) (Entered: 07/12/2024) |
| 07/12/2024 | 30 | Minute Entry for proceedings held before District Judge James D. Peterson: Release Hearing as to Steven Anderegg held on 7/12/2024. (Court Reporter jld.) [0:17] (acd) (Entered: 07/12/2024) |
| 07/15/2024 | | Hearing set re: defendant Steven Anderegg. Telephone Scheduling Conference set for 7/18/2024 at 11:00 AM before Magistrate Judge Stephen L. Crocker. Counsel for Government responsible for setting up the call to chambers at (608) 264-5153. (jat) (Entered: 07/15/2024) |
| 07/15/2024 | 31 | **ORDER** Setting Conditions of Release re: Steven Anderegg (signed by defendant). (<u>Sealed</u>) Signed by Magistrate Judge Stephen L. Crocker on 7/12/24. (jat) (Entered: 07/15/2024) |
| 07/15/2024 | 32 | **ORDER** Setting Conditions of Release - Redacted re: Steven Anderegg (signed by defendant). Signed by Magistrate Judge Stephen L. Crocker on 7/12/24. (jat) (Entered: 07/15/2024) |
| 07/15/2024 | 33 | Receipt for Surrender of Passport as to Steven Anderegg. Passport Number 540673213 issued by USA. (jat) (Entered: 07/15/2024) |
| 07/15/2024 | 34 | **ORDER** Setting Conditions of Release re: Steven Anderegg (signed by defendant and third party custodian). (<u>Sealed</u>) Signed by Magistrate Judge Stephen L. Crocker on 7/12/24. (jat) (Entered: 07/15/2024) |
| 07/15/2024 | 35 | **ORDER** Setting Conditions of Release - Redacted re: Steven Anderegg (signed). Signed by Magistrate Judge Stephen L. Crocker on 7/12/24. (jat) (Entered: 07/15/2024) |

| 07/17/2024 | 36 | Letter *to Judge Crocker* by Steven Anderegg. (Bugni, Joseph) (Entered: 07/17/2024) |
|---|---|---|
| 07/17/2024 | | Hearing reset re: defendant Steven Anderegg to accommodate the court's calendar. Telephone Scheduling Conference reset for 7/25/2024 at 11:00 AM before Magistrate Judge Stephen L. Crocker. Counsel for Government responsible for setting up the call to chambers at (608) 264-5153. (jat) (Entered: 07/17/2024) |
| 07/25/2024 | | Minute Entry for proceedings held before Magistrate Judge Stephen L. Crocker:Telephone Scheduling Conference as to Steven Anderegg held on 7/25/2024 [00:19] (ckl) (Entered: 07/25/2024) |
| 07/25/2024 | 37 | Scheduling **Order** as to Steven Anderegg. Pretrial motions due 9/23/2024. Telephone Pretrial Motion Hearing set for 9/26/2024 at 01:00 PM. Final Pretrial Submissions due 1/24/2025. Telephone Final Pretrial Conference set for 1/30/2025 at 09:00 AM. Final Hearing set for 2/12/2025 at 02:30 PM. Jury Selection and Trial set for 2/18/2025 at 09:00 AM. Signed by Magistrate Judge Stephen L. Crocker on 7/25/24. (jat) (Entered: 07/25/2024) |
| 08/23/2024 | 38 | Government Discovery Letter by William G. Clayman on behalf of United States of America as to Steven Anderegg (Clayman, William) (Entered: 08/23/2024) |
| 09/10/2024 | | Hearing set as to defendant Steven Anderegg. Telephone Pretrial Motion Hearing rescheduled from 9/26/2024 to 10/24/2024 at 10:00 AM before Judge James D. Peterson. Counsel for Government responsible for setting up the call to chambers at (608) 264-5504. (voc) (Entered: 09/10/2024) |
| 09/23/2024 | 39 | Motion to Suppress by Steven Anderegg. (Bugni, Joseph) (Entered: 09/23/2024) |
| 09/23/2024 | 40 | Second Motion to Dismiss *Counts 1 and 4* by Steven Anderegg. (Bugni, Joseph) (Entered: 09/23/2024) |
| 09/23/2024 | 41 | Third Motion to Dismiss *Counts 2 and 3* by Steven Anderegg. (Bugni, Joseph) (Entered: 09/23/2024) |
| 09/23/2024 | 42 | Motion to Compel *Production of the Grand Jury Instructions* by Steven Anderegg. (Bugni, Joseph) (Entered: 09/23/2024) |
| 09/23/2024 | 43 | Motion for Bill of Particulars by Steven Anderegg. (Bugni, Joseph) (Entered: 09/23/2024) |
| 09/27/2024 | 44 | Motion to Modify Conditions of Release by Steven Anderegg. (Bugni, Joseph) (Entered: 09/27/2024) |
| 09/27/2024 | 45 | Brief in Opposition by United States of America as to Steven Anderegg re: 44 Motion to Modify Conditions of Release (Clayman, William) (Entered: 09/27/2024) |
| 09/30/2024 | | Set Hearings as to Steven Anderegg: Telephonic Hearing set for 10/2/2024 at 11:00 AM before Magistrate Judge Stephen L. Crocker. Counsel for Government responsible for setting up the call to chambers at (608) 264-5153. (jls) (Entered: 09/30/2024) |
| 10/02/2024 | 46 | Letter *to Judge Crocker* by Steven Anderegg. (Bugni, Joseph) (Entered: 10/02/2024) |

| 10/02/2024 | 47 | ** TEXT ONLY ORDER ** <br> On October 2, 2024, the court held a hearing on defendant's request to modify one of his conditions of pretrial release (dkt. 44 ). In discussion with the parties and with the Pretrial Services Officer, the court stayed its ruling and provided direction on what needs to happen next. We will reconvene telephonically when the parties and PTSO are ready to revisit this issue. Signed by Magistrate Judge Stephen L. Crocker on 10/2/24. (jat) (Entered: 10/02/2024) |
| --- | --- | --- |
| 10/02/2024 | | Minute Entry for proceedings held before Magistrate Judge Stephen L. Crocker:Motion Hearing as to Steven Anderegg held on 10/2/2024 re 44 Motion to Modify Conditions of Release filed by Steven Anderegg [00:21] (ckl) (Entered: 10/02/2024) |
| 10/23/2024 | 48 | Letter *to Judge Peterson* by Steven Anderegg. (Bugni, Joseph) (Entered: 10/23/2024) |
| 10/24/2024 | 49 | ** TEXT ONLY ORDER ** <br> At the court's telephonic hearing held October 24, 2024, the schedule was amended as follows: defendant's brief supporting his pretrial motions is due November 8, 2024. The government's response is due November 27, 2024. Defendant's reply is due December 9, 2024. The parties agreed to brief the question of whether the alleged obscene images should be produced to defense counsel on the same schedule. The government agreed to identify the three images that are the basis for counts 2 and 3. The government's expert disclosure is due December 2, 2024. Defendant's expert disclosure is due December 16, 2024. The court will hold a telephonic status conference on December 19, 2024, at 8:30 a.m. Signed by District Judge James D. Peterson on 10/24/2024. (voc) (Entered: 10/24/2024) |
| 10/24/2024 | | Hearing set as to defendant Steven Anderegg. Telephone Status Conference set for 12/19/2024 at 08:30 AM before Judge James D. Peterson. Counsel for Government responsible for setting up the call to chambers at (608) 264-5504. (voc) (Entered: 10/24/2024) |
| 11/08/2024 | 50 | Motion to Suppress *and Request for a Franks Hearing* by Steven Anderegg. (Bugni, Joseph) (Entered: 11/08/2024) |
| 11/08/2024 | 51 | Motion to Compel by Steven Anderegg. (Bugni, Joseph) (Entered: 11/08/2024) |
| 11/08/2024 | 52 | Motion to Suppress *Omnibus Brief in Support of Pretrial Motions* by Steven Anderegg. (Attachments: <br> # 1 Exhibit Instagram Search Warrant, <br> # 2 Exhibit Home Search Warrant) (Bugni, Joseph) (Entered: 11/08/2024) |
| 11/08/2024 | 53 | Letter *to Judge Peterson Regarding Omnibus Brief* by Steven Anderegg. (Bugni, Joseph) (Entered: 11/08/2024) |
| 11/18/2024 | 54 | Motion for Extension of Time to File Response/Reply *to Defendant's Pretrial Motions* by United States of America as to Steven Anderegg. (Clayman, William) (Entered: 11/18/2024) |
| 11/19/2024 | 55 | ** TEXT ONLY ORDER ** <br> The government's unopposed motion to extend the briefing schedule is granted. The government's response is due December 13, 2024, with defendant's reply due by January 8, 2025. The December 19, 2024 telephonic status conference is |

| | | canceled and will be re-set for January in consultation with the parties. Signed by Magistrate Judge Stephen L. Crocker on 11/19/2024. (voc) (Entered: 11/19/2024) |
|---|---|---|
| 11/20/2024 | | Hearing set as to defendant Steven Anderegg. Telephone Status Conference set for 1/24/2025 at 09:00 AM before Judge James D. Peterson. Counsel for Government responsible for setting up the call to chambers at (608) 264-5504. (voc) (Entered: 11/20/2024) |
| 12/03/2024 | 56 | Notice of Attorney Appearance Ross Goldman appearing for USA. (Goldman, Ross) (Entered: 12/03/2024) |
| 12/04/2024 | 57 | Sealed Document by Steven Anderegg *in response to the bail modification hearing* (Attachments: # 1 Exhibit letter from the therapist) (Sealed) (Bugni, Joseph) (Entered: 12/04/2024) |
| 12/05/2024 | | Hearing set as to defendant Steven Anderegg. Hearing set for 12/11/2024 at 02:30 PM before Magistrate Judge Stephen L. Crocker. Counsel for Government responsible for setting up the call to chambers at (608) 264-5153. (voc) (Entered: 12/05/2024) |
| 12/06/2024 | 58 | Motion for Extension of Time to File *Expert Disclosures* by United States of America as to Steven Anderegg. (Clayman, William) (Entered: 12/06/2024) |
| 12/06/2024 | 59 | ** TEXT ONLY ORDER ** ORDER granting 58 Motion for Extension of Time to File Expert Disclosures. The government must disclose its experts by December 13, 2024, and defendant must disclose his experts by January 8, 2025. Signed by Magistrate Judge Stephen L. Crocker on 12/6/2024. (voc) (Entered: 12/06/2024) |
| 12/10/2024 | 60 | Sealed Document by USA as to Steven Anderegg *Response to 57 Letter in Response to Bail Modification Hearing* (Attachments: # 1 Exhibit 1 - Amended Criminal Complaint) (Sealed) (Clayman, William) (Entered: 12/10/2024) |
| 12/10/2024 | 61 | Brief in Reply by Steven Anderegg re: 44 Motion to Modify Conditions of Release (Sealed) (Bugni, Joseph) (Entered: 12/10/2024) |
| 12/11/2024 | | Minute Entry for proceedings held before Magistrate Judge Stephen L. Crocker:Motion Hearing as to Steven Anderegg held on 12/11/2024 re 44 Motion to Modify Conditions of Release filed by Steven Anderegg [00:22] (ckl) (Entered: 12/11/2024) |
| 12/13/2024 | 63 | Notice of Expert Testimony as to Steven Anderegg (Attachments: # 1 Expert Notice - Ryan Rickaby, # 2 Expert Notice - Chancey Davis) (Clayman, William) (Entered: 12/13/2024) |
| 12/13/2024 | 64 | Brief in Opposition by United States of America as to Steven Anderegg re: 51 Motion to Compel , 50 Motion to Suppress *and Request for a Franks Hearing*, 52 Motion to Suppress *Omnibus Brief in Support of Pretrial Motions* (Clayman, William) (Entered: 12/13/2024) |
| 12/19/2024 | 65 | ** TEXT ONLY ORDER ** In light of the delays encountered during pretrial motion practice, the remainder of |

| | | the existing schedule is struck, save for the January 24, 2025 telephonic status conference, at which the parties should be prepared to reschedule the case. Signed by Magistrate Judge Stephen L. Crocker on 12/19/2024. (voc) (Entered: 12/19/2024) |
|---|---|---|
| 01/06/2025 | 66 | Unopposed Motion for Extension of Time to File Response/Reply as to 52 Motion to Suppress *Omnibus Brief in Support of Pretrial Motions* by Steven Anderegg. (Bugni, Joseph) (Entered: 01/06/2025) |
| 01/07/2025 | 67 | ** TEXT ONLY ORDER **<br>**ORDER** granting 66 Motion for Extension of Time to File Response/Reply as to Steven Anderegg (1). Signed by Magistrate Judge Stephen L. Crocker on 1/7/2025. (voc) (Entered: 01/07/2025) |
| 01/17/2025 | 68 | Disregard. Modified on 1/17/2025. (lak) (Entered: 01/17/2025) |
| 01/17/2025 | 69 | Brief in Reply by Steven Anderegg re: 52 Motion to Suppress *Omnibus Brief in Support of Pretrial Motions* (Attachments:<br># 1 Ex. A DavidLeyCV-2024,<br># 2 Ex. B Ley-Forensic Experience Summary,<br># 3 Ex C. Reversing Ley exclusion) (Bugni, Joseph) (Entered: 01/17/2025) |
| 01/23/2025 | 70 | Letter *concerning tomorrow's scheduling conference* by Steven Anderegg. (Bugni, Joseph) (Entered: 01/23/2025) |
| 01/24/2025 | 71 | ** TEXT ONLY ORDER **<br>At today's telephone conference, the court moved the scheduling conference to February 7, 2025, at 10:00 a.m. To assist the court in deciding defendants' motion to compel, the government has until January 31, 2025, to submit its list of the 50 images most relevant to counts 1 and 4. Signed by District Judge James D. Peterson on 1/24/2025. (voc) (Entered: 01/24/2025) |
| 02/07/2025 | 72 | Scheduling **Order** as to Steven Anderegg. Final Pretrial Submissions due 3/21/2025. Telephone Final Pretrial Conference set for 3/26/2025 at 09:00 AM. Final Hearing set for 4/2/2025 at 01:30 PM. Jury Selection and Trial set for 4/7/2025 at 09:00 AM Signed by District Judge James D. Peterson on 2/7/2025. (voc) (Entered: 02/07/2025) |
| 02/13/2025 | 73 | Opinion and **ORDER**<br>IT IS ORDERED that:<br>1. Defendant Steven Anderegg's motion to suppress, Dkt. 39 , is DENIED.<br>2. Defendant's motion for a Franks hearing, Dkt. 50 , is DENIED.<br>3. Defendant's motion to dismiss Counts 2 and 3, Dkt. 41 , is DENIED.<br>4. Defendant's motion to dismiss Counts 1 and 4, Dkt. 40 , is GRANTED in part.<br>5. Defendant's motion for review of the grand jury instructions, Dkt. 42 , is DENIED.<br>6. Defendant's motion for a bill of particulars, Dkt. 43 , is DENIED as moot.<br>Signed by District Judge James D. Peterson on 2/13/2025. (voc) (Entered: 02/13/2025) |
| 03/03/2025 | 74 | INTERLOCUTORY NOTICE OF APPEAL by United States of America as to Steven Anderegg re: 73 Order on Motion to Suppress, Order on Motion to Dismiss, Order on Motion to Compel, Order on Motion for Bill of Particulars. Appeal filed by USA. Docketing Statement filed. (Attachments:<br># 1 Docketing Statement) (Clayman, William) Modified on 3/3/2025. (lak) |

(Entered: 03/03/2025)