No. 25-1354

# United States Court of Appeals
# For the Seventh Circuit

UNITED STATES OF AMERICA,

      *Plaintiff-Appellant*,

      *v.*

STEVEN ANDEREGG,

      *Defendant-Appellee*.

On Appeal from the United States District Court
for the Western District of Wisconsin,
Case No. 24-cr-50,
The Honorable James D. Peterson, Presiding

## BRIEF OF DEFENDANT- APPELLEE

Joseph A. Bugni
*Wisconsin Bar No.* 1062514
Kaitlyn Spiegl
HURLEY BURISH, S.C.
P.O. Box 1528
Madison, WI  53701-1528
jbugni@hurleyburish.com
(608) 257-0945

HURLEY BURISH, S.C.

## Disclosure Statement

Pursuant to Circuit Rule 26.1, counsel informs this Court that Steven A. Anderegg, a natural person, is represented in this appeal by Hurley Burish, S.C., through Joseph A. Bugni. Before the district court, he was also represented by Hurley Burish through Bugni.

Dated: August 15, 2025

s/ *Joseph A. Bugni*

Joseph A. Bugni

## Table of Contents

I.    Jurisdictional Statement ................................................................ 1

II.    Statement of the Issue.................................................................. 2

III.    Introduction. ................................................................................ 3

IV.    Statement of the case. ................................................................. 5

    A.    An overview of the defense's as-applied challenge to the statute for the possession and production of obscene materials. .......................................... 5

    B.    A brief overview of the law that informed the district court's decision. ..... 7

        i.    For a quarter century, the courts grapple with how to define what's obscene versus what's protected speech. ............................................. 8

        ii.    Under *Stanley*, the First Amendment protects a person's right to possess and produce obscene material *inside* the home. ................. 13

    C.    The district court holds that *Stanley* applies and dismisses count four. .... 17

V.    Summary of the argument.......................................................... 21

VI.    Argument: prosecuting Anderegg for possessing obscene materials inside his home violates the First Amendment protections in *Stanley*. .................................. 22

    A.    *Stanley* provides protection to possessing obscene materials in the home.23

        i.    There is no support for the government's attempt to cabin *Stanley* to *only* adults. .......................................................................... 24

        ii.    There is no support that a jurisdictional link undermines a First Amendment right.............................................................. 30

    B.    The government cannot establish a compelling need to overcome the First Amendment protections in *Stanley*.................................................. 32

        i.    The government cannot meet the demands of strict scrutiny......... 33

        ii.    The Supreme Court has already rejected all of the government's proffered reasons for infringing upon a person's first Amendment rights. ................................................................ 35

VII.    Conclusion. .............................................................................. 38

HURLEY BURISH, S.C.

# Table of Authorities

*A Quantity of Copies of Books v. Kansas*,
    378 U.S. 205–11 (1964) ........................................................................... 8

*Am Curious-Yellow"*,
    404 F.2d 196 (2d Cir. 1968) .................................................................. 8

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
    809 F.3d 1282 (Fed. Cir. 2015) ............................................................ 26

*Ashcroft v. Free Speech Coalition*,
    535 U.S. 234 (2002) ................................................. 11, 17, 18, 19, 32, 35, 36, 37

*Bantam Books, Inc., v. Sullivan*,
    372 U.S. 58 (1963) .................................................................................. 8

*Brown v. Davenport*,
    596 U.S. 118 (2022) ....................................................................... 26, 27, 28

*Brown v. Ent. Merchants Ass'n*,
    564 U.S. 786 (2011) ............................................................................... 22

*Christian Faith Fellowship Church v. Adidas AG*,
    841 F.3d 986 (Fed. Cir. 2016) ............................................................. 27

*Cincinnati v. Contemporary Arts Center*,
    57 Ohio Misc. 2d 9, 566 N.E.2d 207 (Hamilton Cnty. Ct. 1990) ..................... 12

*File v. Martin*,
    33 F.4th 385 (7th Cir. 2022) ................................................................ 27

*Free Speech Coalition, Inc. v. Paxton*,
    145 S.Ct. 2291 (2025) ........................................................................... 34

*Hill v. Colorado*,
    530 U.S. 730 (2000) ............................................................................... 17

*Jacobellis v. Ohio*,
    378 U.S. 184–96 (1964) ......................................................................... 8

*Jenkins v. Georgia*,
    418 U.S. 153 (1974) ............................................................................... 9

*Kaplan v. California*,
    413 U.S. 115 (1973) ............................................................................... 25

*Kingsley International Pictures Corp. v. Regents*,
    360 U.S. 684 (1959) ........................................................................ 14, 16

*Lawrence v. Texas,*
   539 U.S. 558, (2003) ................................................................. 16

*Mallory v. Norfolk Southern Railway Co.,*
   600 U.S. 122 (2023) ................................................................. 27

*Manual Enterprises, Inc. v. Day,*
   370 U.S. 478 (1962) ................................................................. 25

*Miller v. California,*
   413 U.S. 15 (1973) ........................................... 5, 6, 8, 9, 10, 25

*Mishkin v. State of N.Y.,*
   383 U.S. 502 (1966) ................................................................. 25

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
   597 U.S. 1 (2022) .................................................................... 22

*New York v. Ferber,*
   458 U.S. 747 (1982) .................................................. 10, 11, 25, 26

*New York v. P.J. Video, Inc.,*
   475 U.S. 868–74 (1986) .............................................................. 8

*Obergefell v. Hodges,*
   576 U.S. 644 (2015) ................................................................. 16

*Osborne v. Ohio,*
   495 U.S. 103 (1990) ................................................................. 26

*Paris Adult Theater I v. Slaton,*
   413 U.S. 49 (1973) .................................................................. 25

*Peel v. Atty Reg. & Discipline Com'n of Illinois,*
   496 U.S. 91 (1990) .................................................................. 22

*People v. Larsen,*
   5 N.Y.S.2d 55 (Ct. Spec. Sess. 1938) ........................................ 12

*Planned Parenthood v. Casey,*
   505 U.S. 833 (1992) ................................................................. 16

*Pope v. Illinois,*
   481 U.S. 497 (1987) .................................................................. 9

*Reed v. Town of Gilbert, Arizona,*
   576 U.S. 155 (2015) .......................................................... 22, 33, 34

Hurley Burish, S.C.

*Reno v. American Civil Liberties Union*,
　521 U.S. 844 (1997) ..................................................................... 9

*Reno v. Flores*,
　507 U.S. 292 (1993) ......................................................... 22, 32, 33

*Roe v. Wade*,
　410 U.S. 113 (1973) ................................................................... 16

*Roth v. United States*,
　354 U.S. 476 (1957) ........................................................... 7, 8, 10

*Smith v. United States*,
　431 U.S. 291 (1977) ..................................................................... 8

*Stanley v. Georgia*,
　394 U.S. 557 (1969) ................................ 3, 13, 14, 15, 16, 23, 24, 25, 31, 32, 36

*State v. Bonynge*,
　450 N.W.2d 331 (Ct. App. MN. 1990) ........................................ 25

*Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*,
　460 U.S. 533 (1983) ................................................................... 26

*United States v. A Motion Picture Film Entitled "I am Curious-Yellow,"*
　404 F.2d 196 (2d Cir. 1968) ....................................................... 8

*United States v. Greve*,
　490 F.3d 566 (7th Cir. 2007) ..................................................... 22

*United States v. Knox*,
　32 F.3d 733 (3d Cir. 1994) ....................................................... 29

*United States v. Kussmaul*,
　987 F.2d 345 (6th Cir. 1993) ..................................................... 29

*United States v. Morales-de Jesus*,
　372 F.3d 6 (1st Cir. 2004) ......................................................... 29

*United States v. Morrison*,
　529 U.S. 598 (2000) ................................................................... 30

*United States v. Orito*,
　413 U.S. 139 (1973) ............................................................. 3, 23

*United States v. Ostrander*,
　114 F.4th 1348 (11th Cir. 2024) ...................................... 15, 16, 17, 31

v

*United States v. Thirty-Seven Photographs,*
402 U.S. 363 (1971) ........................................................................ 19

*United States v. Rahimi,*
117 F.4th 331 (5th Cir. 2024) ........................................................ 27

*United States v. Reidel,*
402 U.S. 351 (1971) ........................................................................ 15

*United States v. Richards,*
755 F.3d 269 (5th Cir. 2014) .......................................................... 25

*United States v. Richardson,*
856 F.2d 644 (4th Cir.1988) ........................................................... 29

*United States v. Twelve 200-ft. Reels of Super 8mm. Film,*
413 U.S. 123–27 (1973) .................................................................. 15

*United States v. Whorley,*
550 F.3d 326–33 (4th Cir. 2008) ..................................................... 15

*United States v. Williams,*
553 U.S. 285–89 (2008) ............................................................ 10, 29

*United States v. Windsor,*
570 U.S. 744 (2013) ........................................................................ 16

*Washington v. Glucksberg,*
521 U.S. 702 (1997) .................................................................. 22, 32

HURLEY BURISH, S.C.

**Other Authorities**

18 U.S.C. § 48 ......................................................................... 25

18 U.S.C. § 1470 ..................................................................... 34

18 U.S. Code § 1466A .......................................................... 6, 22

28 U.S.C. § 1291 ...................................................................... 1

28 U.S.C. § 1331 ...................................................................... 1

3 W. Blackstone, *Commentaries on the Laws of England*, 288 (1768) ....................................... 23

Edward Coke, *Selected Writings of Sir Edward Coke,* vol. I (1604) ......................................... 23

Jennifer M. Kingsley, *Sexual Privacy in the Internet Age: How Substantive Due Process Protects Online Obscenity*, 16 Vand. J. Ent. & Tech. L. 103, 109–10 (2013) ................... 15

PROTECT Act, S. 151, 108th Cong. § 2 (2003) ....................................................... 35

William Pitt, Earl of Chatham, *Speech on the Excise Bill, House of Commons* (Mar. 1763) ... 23

## I.     Jurisdictional Statement

The appellant's jurisdictional statement is complete and correct.

## II.      Statement of the Issue

This case presents a single issue: In *Stanley,* the Supreme Court held that the First Amendment protects a person's possession of obscene materials within the privacy of the home. The government charged Anderegg with possession of obscene materials inside his home. The district court held that the prosecution violated Anderegg's rights under *Stanley* and dismissed that count. Did it err?

Hurley Burish, S.C.

### III.    Introduction.

This appeal centers on an arcane area of the law: the constitutional protections for possessing obscene materials within the privacy of a person's home. The special protections the law affords the home have been around since Blackstone and reaffirmed in myriad cases. As the Supreme Court has noted, "the Constitution extends special safeguards to the privacy of the home, just as it protects other special privacy rights such as those of marriage, procreation, motherhood, child rearing, and education."[1] Indeed, over fifty years ago in *Stanley v. Georgia,* the Supreme Court extended these protections to those who possess obscene material inside the home: "the States retain broad power to regulate obscenity; *that power simply does not extend to mere possession by the individual in the privacy of his own home*."[2]

Since then, Congress and the states have criminalized lots of conduct related to obscene materials—it can't be transported, received, distributed, or possessed outside the home. And a long, long line of Supreme Court cases has affirmed Congress's ability to criminalize *every* one of those actions. You can't transport obscene materials, you can't receive them, you can't display them in a movie house or possess them on a street corner, but in the privacy of a person's home, the protections offered by *Stanley* are absolute.

Despite *Stanley*'s clarity, the government has charged Anderegg with possessing obscene materials inside his home—materials that he allegedly produced on his computer. In response, the defense moved to dismiss and filed an as-applied challenge

---

[1] *United States v. Orito*, 413 U.S. 139, 142-143 (1973).
[2] *Stanley v. Georgia*, 394 U.S. 557, 568 (1969).

to the statute, arguing that while Congress was free to criminalize possession *outside* the home, possession *inside* the home was protected. The district court agreed. It read *Stanley* for exactly what that case says: "*Stanley* is an exception to the general rule that obscene material isn't protected by the First Amendment."[3] And then it dismissed one count of the indictment.[4]

In response to dismissing that single count, the government has filed this interlocutory appeal trying (as best it can) to distinguish and limit *Stanley*, attempting to take that case's plain meaning and consistent application from black letter to dead letter law. But while the government may not like *Stanley* or respect the opinion's reasoning, it's the law. At least it is in both the district court and this Court. If *Stanley* is to be eroded and overruled, that can only come from one court—and it's not sitting in Chicago.

While this case has the headline-grabbing appeal of being the first AI obscenity prosecution in the country, and it deals with the First Amendment's lofty protections, it's really a simple case about the application of Supreme Court precedent. What follows is a complete run down of that precedent, so this Court can see why *Stanley* remains good law and why the government is mistaken that *Stanley* doesn't apply. Armed with that understanding, this Court must affirm the district court and allow Anderegg his right to have a jury decide whether the images at issue in the other counts are protected by the First Amendment.

---

[3] R. 73 at 15.
[4] R. 73 at 20.

IV.     **Statement of the case.**

The government's brief has a long and (somewhat) unnecessary recitation of the facts it thinks it will prove at trial. Most of them have nothing to do with the appeal's narrow legal questions. This is what matters: Anderegg was charged with four counts, all centered around the creation of AI generated materials that the government alleges are obscene.[5] There will be a trial on whether they are, in fact, obscene.[6] To be clear, the defense challenged whether the images could (as a matter of law) qualify as obscene— whether they were depictions of "patently offensive 'hard core' sexual conduct."[7] The images are, to be sure, strange, but they are not hard core, patently offensive pornography.[8] The district court held that it could not decide that question on a motion to dismiss; instead, it would be a jury question.[9] The defense cannot take an interlocutory appeal of that decision. Nor for that matter can the defense take an interlocutory appeal on whether *Stanley* protects the production of obscene materials inside the home. So the issue before this Court is, indeed, a small sliver of the case.

A.     **An overview of the defense's as-applied challenge to the statute for the possession and production of obscene materials.**

Relevant to *this* appeal, the litigation below initially focused on the protection afforded Anderegg in his production and possession of obscene materials within the privacy of his home. Everyone agreed that if they were obscene, he couldn't distribute

---

[5] R. 2.
[6] R. 73 at 14.
[7] *Miller v. California*, 413 U.S. 15, 28 (1973).
[8] *Id.*
[9] R. 73 at 14.

HURLEY BURISH, S.C.

the materials.[10] But within Anderegg's own home, the defense argued that he had an absolute right to produce and possess them.[11] He could write an obscene play, he could paint an obscene picture, he could sculpt an obscene statue, or he could create an obscene image with AI. Whatever the medium, Anderegg (like any person) had the right to create and possess obscene materials within the home.[12] And the discovery was clear: all of Anderegg's activities (as it related to the possession and creation of obscene materials) took place inside his home.[13]

The defense then moved to dismiss that count (making an as-applied challenge to § 1466A), arguing that while the statute was licit on its face, when applied to Anderegg's conduct inside the home it violated his First Amendment rights under *Stanley*.[14] In response, the Government argued that *Stanley* didn't apply, and it made the same two arguments that it makes here.[15] First, *Stanley* is inapplicable because it only dealt with obscene materials involving adults; and second, the Government had a compelling need to criminalize the in-home possession of images like Anderegg's, namely, the need to protect real children.[16] In its decision, the district court split the baby, finding that *Stanley* provided complete protection for possession of obscene materials inside the home but not the creation of the very same materials.[17] Now, to understand the issues fully, and

---

[10] *Miller*, 413 U.S. at 28; R. 73 at 13-14.
[11] R. 52 at 3.
[12] R. 52 at 19-20.
[13] R. 64 at 6-7.
[14] R. 52.
[15] R. 52 at 12; 14.
[16] R. 64 at 12-21.
[17] R. 73 at 21.

Hurley Burish, S.C.

before getting into the court's reasoning, it's important to *briefly* pause and set the stage for the legal questions the district court confronted.

### B.    A brief overview of the law that informed the district court's decision.

For most of our Nation's history, the question of "obscenity" was left to the States; it wasn't until the 1950s that the Supreme Court in *Roth* tackled the First Amendment implications of people possessing obscene material.[18] There, the Court held that, like libel and slander, obscenity was "utterly without redeeming social importance" and universally prohibited.[19] Based on its failure to contribute to the common good, the Court categorically held that "obscenity is not within the area of constitutionally protected speech."[20] Yet two core questions would govern the long line of cases that followed. First, where is the line drawn between protected speech and obscenity; and second, what protections does the First Amendment offer for individuals to consume obscene materials in the privacy of their own homes? The second question is at the heart of this appeal, but a proper understanding of the first question informs the second.

---

[18] *Roth v. United States*, 354 U.S. 476, 488 (1957).
[19] *Id.* at 484.
[20] *Id.* at 485.

### i. For a quarter century, the courts grapple with how to define what's obscene versus what's protected speech.

In *Roth,* the Supreme Court defined obscenity as material that is "utterly without redeeming social importance" and that deals with sex in a manner "appealing to the prurient interest."[21] As one would imagine, that was not a helpful test, and challenges abounded to so-called dirty books, plays, magazines, and movies.[22] In the wake of the sexual revolution, the Court was slammed with cases about whether this or that film had social value and it was stuck making *ad hoc* decisions on what was protected.[23] This entailed the Court watching (among others) the film *The Lovers*.[24] Agreeing the film was not obscene, Justice Stewart penned a phrase that still abounds in the law and culture: "I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description . . . *But I know it when I see it,* and the motion picture involved in this case is not that."[25]

Over the next few years, the Court tried to construct a better test for what was obscene. Finally, in *Miller,* the Court came up with this formulation: the work must "appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value."[26] The Court emphasized that obscenity only reached hard-core

---

[21] *Id.* at 484.

[22] *See, e.g., United States v. A Motion Picture Film Entitled "I Am Curious-Yellow",* 404 F.2d 196, 201 (2d Cir. 1968); *A Quantity of Copies of Books v. Kansas,* 378 U.S. 205, 210–11 (1964); *Bantam Books, Inc., v. Sullivan,* 372 U.S. 58, 66 (1963).

[23] *See, e.g., New York v. P.J. Video, Inc.,* 475 U.S. 868, 873–74 (1986); *Smith v. United States,* 431 U.S. 291, 306 (1977).

[24] *Jacobellis v. Ohio,* 378 U.S. 184, 195–96 (1964).

[25] *Id.* (emphasis added).

[26] *Miller,* 413 U.S. at 24.

pornography: "Under the holdings announced today, no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe *patently offensive 'hard core' sexual conduct specifically defined by the regulating state law*."[27] That is, material that "goes *substantially* beyond customary limits of candor and affronts contemporary community standards of decency."[28]

The Court then addressed the I-know-it-when-I-see-it standard and how unworkable it was, with no one in the country *truly* knowing what was really obscene.[29] The *Miller* test would solve all the prior problems because now there were "concrete guidelines to isolate 'hard core' pornography from expression protected by the First Amendment."[30] The opinion continued: "The protection given speech and press was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people. But the public portrayal *of hard-core sexual conduct for its own sake*, . . . is a different matter."[31] With that, there was a new threshold and understanding that cases for fifty years would be guided by.[32]

In the cases that followed, courts were careful to note that they were dealing with subtle distinctions that could get blurred.[33] And, as the Supreme Court observed in *Miller*, standards do change: "One can concede that the 'sexual revolution' of recent years may

---

[27] *Id.* at 27 (emphasis added).
[28] *Id.* at 31 (emphasis added).
[29] *See id*. at 23–25.
[30] *Id*. at 29.
[31] *Id*. at 34–35 (internal quotations omitted) (emphasis added).
[32] *See, e.g., Reno v. American Civil Liberties Union*, 521 U.S. 844 (1997); *Pope v. Illinois*, 481 U.S. 497 (1987); *Jenkins v. Georgia*, 418 U.S. 153, 159-60 (1974).
[33] *See, e.g., Roth v. United States*, 354 U.S. 476, 491-92 (1957) ("Many decisions have recognized that these terms of obscenity statutes are not precise.").

HURLEY BURISH, S.C.

have had useful byproducts in striking layers of prudery from a subject long irrationally kept from needed ventilation."[34] That is, of course, true—*The Lovers* that Justice Stewart had to cast the deciding vote on would get a PG-13 rating today. Times change. And with it, so does society's tolerance of sexual expression.

With this jurisprudential foundation laid, the next inquiry gets more specific because, despite the evolution of standards, *certain* rules *do* persist. When an actual child is involved there's a different analysis, one from a case called *Ferber*.[35] Any pornography involving a real child can be criminalized because it's not the image's content that is condemned but the child's victimization.[36] It's important to remember that in *Ferber* the movie at issue showed two minor boys masturbating; it wasn't obscene, but because it was real children and since it captured their abuse it could be criminalized.[37] But when there are no actual minors (as in computer-generated pornography) then *Miller* controls.[38] That point was made plain in *Free Speech Coalition*, where the Supreme Court affirmed that "[v]irtual child pornography is not 'intrinsically related' to the sexual abuse of children."[39] Thus, with *virtual* images of children the issue is whether they run afoul of *Miller*, not whether they are merely pornographic.[40] To be clear, the focus isn't on the medium—charcoal versus watercolor, sculpture versus needlepoint, fresco versus AI— but rather on what's depicted: is it hard-core, patently offensive sexual conduct?

---

[34] *Miller*, 413 U.S. at 36.
[35] *New York v. Ferber*, 458 U.S. 747, 764 (1982).
[36] *Id.*
[37] *Id.*
[38] *See Miller,* 413 U.S. at 27 (emphasis added); *see also United States v. Williams*, 553 U.S. 285, 288–89 (2008).
[39] *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 250 (quoting *Ferber*, 458 U.S. at 759).
[40] *Id.*

HURLEY BURISH, S.C.

Naturally, that's a tough line to draw. One man's hard-core, patently offensive pornography can be another man's art. And it threatens this country's tradition of freedom of thought to subject a person to prosecution before that he can determine whether he can safely possess the materials he's created in his own home. After all, when we're talking about obscene materials, we're dealing with sexual images and very fine lines. And since men started drawing on the walls of caves, they have featured images of sex—often with young participants.[41] That's true of Grecian pottery; it's true of African and Asian art, and it's been a theme of European art since the Enlightenment.[42] In America, as each new form of technology has emerged, that technology has been used to feature sex. From drawings to magazines, from the camera to the movie projector, from BetaMax to the internet, as new technology arrives it's used to portray sexual images—that is just a truism of life.[43]

Another "truism," if you will, is that, as sexual depictions have appeared in each new medium, they have all been met with censorship and criminal sanctions. People called for Edison's arrest with the showing of a "kiss" in a silent film.[44] In 1938, the publisher of LIFE magazine was acquitted of obscenity charges for selling magazines

---

[41] *See* Third International Conference on the Rock Art of Northern Africa, *Programme*, Royal Academy for Overseas Sciences (Sept. 12–13 2023) https://tinyurl.com/bdd2nwxb; *see also Free Speech Coalition*, 535 U.S. at 246.
[42] *Two-handled cup with male couples*, held by Museum of Fine Arts Boston's Greek Pottery Collection, https://tinyurl.com/mcn76dzx; Jenna Ross, *Pedophilia in Ancient Greece and Rome*, The Collector (May 23, 2020), https://tinyurl.com/4mhek5ws, *see* Kinsey Institute, *Eros in Asia: Erotic Art from Iran to Japan Online Gallery*, https://tinyurl.com/mjh92smm; Reina Gattuso (Sept. 2022), *Female Fertility Figurines in the Ancient Mediterranean*, https://tinyurl.com/3vc3cc8b; *Art Nouveau and the Erotic*, Victoria and Albert Museum https://tinyurl.com/3src62wv.
[43] *See Free Speech Coalition*, 535 U.S. at 246-247.
[44] *See* Olivia B. Waxman, *This Is What Americans Used to Consider Obscene*, TIME (June 21, 2016), https://tinyurl.com/3dj89mcp.

with stills from the film "Birth of a Baby."[45] With the release of *Midnight Cowboy* in 1969 there were calls for arrests, and when the Mapplethorpe exhibit was shown in Cincinnati, the Art Museum's director was placed on trial.[46]

Yet all of that was protected by the First Amendment.[47] From protected, it was tolerated and soon those pieces were accepted by society at large. They even came to be celebrated.[48] For his part, Mapplethorpe's photography has a permanent exhibit at the Getty Museum in LA and is featured in books widely available on Amazon, and *Midnight Cowboy* is streaming on Prime. Again, movies that were once reviewed by five Justices for obscenity would now be rated PG-13.

---

[45] *People v. Larsen*, 5 N.Y.S.2d 55, 57 (Ct. Spec. Sess. 1938); *Likes 'Birth of a Baby,'* N.Y. TIMES (April 19, 1938), https://tinyurl.com/rhnbrmn6.

[46] Glenn Frankel, *X-Rated: Inside the Myths and Legends of* Midnight Cowboy, VANITY FAIR (Feb. 26, 2021), https://tinyurl.com/5n6vxxdm. *Cincinnati v. Contemporary Arts Center*, 57 Ohio Misc. 2d 9, 11, 566 N.E.2d 207 (Hamilton Cnty. Ct. 1990); Alex Palmer, *When Art Fought the Law and Art Won*, SMITHSONIAN MAGAZINE (Oct. 2, 2015), https://tinyurl.com/48p8v7c4.

[47] *See* Waxman, *This Is What Americans Used to Consider Obscene*, TIME (June 21, 2016), https://tinyurl.com/3dj89mcp.

[48] *E.g.,* Robert McDonald, *Censored*, QUEER CULTURAL CTR., https://queerculturalcenter.org/robert-mapplethorpe/; Frankel, *X-Rated: Inside the Myths and Legends of* Midnight Cowboy, VANITY FAIR (Feb. 26, 2021), https://tinyurl.com/5n6vxxdm.

HURLEY BURISH, S.C.

ii.     Under *Stanley*, the First Amendment protects a person's right to possess and produce obscene material *inside* the home.

Understanding that our sexual mores change and that there's a danger in *over* criminalizing obscene materials, the Supreme Court carved out *absolute* protections for obscene materials *inside* the home.[49] That is, while obscene materials aren't protected by the First Amendment (they can be banned), the First Amendment provides (within a person's home) the freedom of "private possession of such material."[50] That protection was first articulated by the Court in *Stanley* in 1969—which was a few years before *Miller* and while the Supreme Court was still wrestling with the I-know-it-when-I-see-it test.[51]

In *Stanley,* the Court grounded its analysis on the First Amendment's lofty goals and noted that consistent with those values, Stanley was "asserting the right to read or observe what he pleases—the right to satisfy his intellectual and emotional needs in the privacy of his own home. *He is asserting the right to be free from state inquiry into the contents of his library*."[52] Even though obscene materials don't have First Amendment protection outside the home, the same material is protected *inside* the home: "[W]e think that mere categorization of these films as 'obscene' is insufficient justification for such a drastic invasion of personal liberties guaranteed by the First and Fourteenth Amendments. Whatever may be the justifications for other statutes regulating obscenity, we do not think they reach into the privacy of one's own home."[53] And it added: "If the First

---

[49] *Stanley v. Georgia*, 394 U.S. 557, 563 (1969).
[50] *Id.*
[51] *Id.*
[52] *Id.* at 565 (emphasis added).
[53] *Id.*

HURLEY BURISH, S.C.

Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch. *Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds*."[54]

After establishing that the law could only go so far, the Court addressed the counterargument for *why* Georgia (or any sovereign) would want to criminalize obscene materials within a person's home: "And yet, in the face of these traditional notions of individual liberty, Georgia asserts the right to protect the individual's mind from the effects of obscenity. *We are not certain that this argument amounts to anything more than the assertion that the State has the right to control the moral content of a person's thoughts*."[55] The Court then took on the argument more fully, rejecting the state's logic and emphasizing that the state's position was "wholly inconsistent with the philosophy of the First Amendment. … 'this argument misconceives what it is that the Constitution protects.'"[56] The Court concluded: "*Whatever the power of the state to control public dissemination of ideas inimical to the public morality, it cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts*."[57]

Consistent with those principles, what happens within the four walls of a person's home (with obscene materials) is off-limits from government control.[58] But, as soon as a

---

[54] *Id.* (emphasis added).
[55] *Id.* (emphasis added).
[56] *Id.* at 566 (quoting *Kingsley International Pictures Corp. v. Regents*, 360 U.S. 684, 688–89 (1959)).
[57] *Id.* (emphasis added).
[58] *Id.* at 564–66.

person (or material) goes beyond the doorstep, those protections disappear.[59] Case law is clear on that.[60] In the decades that followed *Stanley*, defendants tried to expand its reasoning, so they could receive or transport or distribute obscene materials for private consumption.[61] Yet in each case, the Court was firm: A person does not have the right to receive obscene materials from another person *outside* the home.[62] A person definitely doesn't have the right to distribute them outside the home.[63] Nor does a person have the right to display the materials *outside* the home.[64] But so long as you're *inside* the home, the First Amendment provides you absolute protection.[65]

Now, scholars debate whether *Stanley* is truly a First Amendment case.[66] It clearly uses the term "First Amendment" and it cites the law a lot—11 times.[67] And *Stanley* remains good law as a First Amendment case.[68] Yet another way to think of *Stanley* is that it resembles a substantive-due-process case, before the Court had developed the vocabulary for what constitutes a "substantive-due-process" right. To be clear, *Stanley* was decided in 1969, so it was post-*Lochner* and post-*Griswold* but it was before *Roe*, *Casey*, *Glucksberg*, *Lawrence*, *Windsor* and *Obergefell* where the Supreme Court articulated how

---

[59] *See id.* at 568.

[60] *United States v. Reidel*, 402 U.S. 351, 355 (1971); *United States v. Twelve 200-ft. Reels of Super 8mm. Film*, 413 U.S. 123, 126–27 (1973).

[61] *See, e.g., United States v. Whorley*, 550 F.3d 326, 332–33 (4th Cir. 2008); *United States v. Reidel*, 402 U.S. 351 (1971).

[62] *Whorley*, 550 F.3d at 332–33; *Reidel*, 402 U.S. at 351.

[63] *Whorley*, 550 F.3d at 332–33; *Reidel*, 402 U.S. at 351.

[64] *Whorley*, 550 F.3d at 332–33; *Reidel*, 402 U.S. at 351.

[65] *Stanley*, 394 U.S. at 564.

[66] *See, e.g.,* Jennifer M. Kingsley, *Sexual Privacy in the Internet Age: How Substantive Due Process Protects Online Obscenity*, 16 VAND. J. ENT. & TECH. L. 103, 109–10 (2013).

[67] *Stanley*, 394 U.S. at 559; 560; 563; 565; 566.

[68] *Reidel*, 402 U.S. at 355; *United States v. Ostrander*, 114 F.4th 1348, 1362 (11th Cir. 2024).

HURLEY BURISH, S.C.

certain innate rights operate within the right to privacy and sexual freedom.[69] Indeed, in all of those cases the rights protected were grounded in part or in whole on the traditional protections offered within the home.[70] So while *Stanley* grounds itself in the language of the First Amendment, the fundamental right it articulates is one of privacy within the home.[71] Within the home a person is free to do as they will with obscene materials, but those materials can't leave the confines of the home—once they do the constitutional protections afforded are lost. And that principle accords with the traditional protections offered to the home—simply put, the home is different.[72]

That point was recently affirmed by the Eleventh Circuit in a case called *Ostrander,* where the Court analyzed *Stanley's* applicability to a facial challenge to a person's possession of obscene materials.[73] There, the defendant was homeless, so the geographic (four-walls) argument didn't have the same purchase: he had to make a facial challenge.[74] Despite that difference, the Court held that "the First Amendment protects the private possession in one's own home of obscene material depicting *virtual* minors, so long as no real children are victimized."[75] And it acknowledged that creating images inside the home would be protected by the First Amendment.[76] But it dismissed the facial challenge

---

[69] Kingsley, *supra* note 64, at 113–15; *Roe v. Wade*, 410 U.S. 113, 152 (1973); *Planned Parenthood v. Casey*, 505 U.S. 833, 846 (1992); *Lawrence v. Texas*, 539 U.S. 558, (2003); *United States v. Windsor*, 570 U.S. 744, 769 (2013); *Obergefell v. Hodges*, 576 U.S. 644, 666 (2015).

[70] *See Roe*, 410 U.S. at 152-54; *Casey*, 505 U.S. at 896; *Lawrence*, 539 U.S. at 562; *Windsor*, 570 U.S. at 769; *Obergefell*, 655 U.S. at 666. Of course, the later two rested on Equal Protection grounds, but they were rooted in the right to privacy.

[71] *Stanley*, 349 U.S. at 565.

[72] *See Lawrence,* 539 U.S. at 562.

[73] *United States v. Ostrander*, 114 F.4th 1348 (11th Cir. 2024).

[74] *Id.* at 1355.

[75] *Id.* at 1362 (citing *Ashcroft v. Free Speech Coalition*, 535 U.S. 250, 256 (2002)) (emphasis in original).

[76] *Id.* at 1363-63.

to the statute, noting that there was no realistic indication someone would be charged for producing images in their own home.[77] That is, the Eleventh Circuit acknowledged that a prosecution for production of obscene materials in the home would be unconstitutional—if that were the case before it.[78] And it re-affirmed that, inside the home, the First Amendment and *Stanley* provide complete protection; leave the home and it disappears, but inside the home it is absolute.[79]

### C.    The district court holds that *Stanley* applies and dismisses count four.

It's against that backdrop and with that understanding that the district court analyzed the defense's challenge to the counts charging Anderegg with possessing and producing obscene materials. The district court observed that *Stanley* does precisely what it says: it provides an exception to the government's general ability to criminalize obscene material.[80] The court then went on to reject *all* of the government's arguments for why *Stanley* would not apply—arguments that mirror its position on appeal.[81]

First, the court noted that the government (as it does here) has argued that, since Anderegg is charged with AI generated material involving minors, the analysis for child-pornography cases should apply.[82] The government wanted to apply a case called *Osborne,* which is a child-pornography case (it dealt with *real* children) and not an obscenity case.[83] The court rejected that argument: "*Osborne* isn't on point because the

---

[77] *Id.* at 1363.
[78] *Id.* (cleaned up) (quoting *Hill v. Colorado,* 530 U.S. 703, 733 (2000).
[79] *Id.* at 1362.
[80] R. 73 at 15.
[81] R. 73 at 15-19.
[82] R. 73 at 16.
[83] R. 64 at 15.

HURLEY BURISH, S.C.

images here aren't of real children."[84] That is, the court held that the fact the images were AI-created (as opposed to other means) didn't mean anything with regard to whether *Stanley* applies.[85]

Second, the court noted that the government's "compelling reasons" for infringing on Anderegg's First Amendment rights—namely, protecting children—had already been largely addressed in *Free Speech Coalition*.[86] To be clear, there, the issue in *Free Speech Coalition* was virtual child pornography that was *not* necessarily obscene. And there, the exact same reasons were offered by the government for why First Amendment protections could be curtailed.[87] The district court noted: the "government's proffered rationale here that an offender's use of AI-generated material would 'normalize' that behavior and increase risk to children is substantially similar to the government's argument in *Free Speech Coalition* that virtual child pornography might 'whet the appetite' of offenders."[88] And the district court echoed the Supreme Court's conclusion: "The Government has shown no more than a remote connection between speech that might encourage thoughts or impulses and any resulting child abuse."[89] That is not enough under the law. The district court also rejected the government's argument (echoed here) that "modern-day virtual child pornography [has become] so photorealistic that its existence hampers the ability of law enforcement to tell whether children in the images

---

[84] R. 73 at 18.
[85] R. 73 at 18.
[86] R. 73 at 16; *Free Speech Coalition*, 535 U.S. at 251-256.
[87] *Free Speech Coalition*, 535 U.S. at 251-256.
[88] R. 73 at 17.
[89] *Id.*

18

are real and to garner child pornography convictions necessitated on the children being real."[90] The district court noted that argument was also raised and rejected in *Free Speech Coalition:* "[t]he Government may not suppress lawful speech as the means to suppress unlawful speech. Protected speech does not become unprotected merely because it resembles the latter."[91]

Third, the district court rejected the government's argument (also parroted here) that the jurisdictional nexus present for federal charges somehow overrides *Stanley.* The court observed that "The upshot of the government's argument is that the First and Fourth Amendments protect private possession of obscene materials, but only so long as they weren't produced using materials moved in interstate or foreign commerce."[92] It continued and explained that, "If the jurisdictional element were enough to overcome *Stanley, Stanley* would be a dead letter."[93] Indeed, Justice Black once remarked that such an argument threatened to make *Stanley* valid only "when a man writes salacious books in his attic, prints them in his basement, and reads them in his living room."[94] But the government's argument would take that one step further and demand that the typewriter and paper used to write the salacious story be manufactured in Wisconsin. With that, the court dismissed the possession count.[95]

---

[90] *Id.*
[91] *Id*. at 17-18 (quoting *Free Speech Coalition*, 535 U.S at 255).
[92] *Id*. at 19.
[93] *Id.*
[94] *United States v. Thirty-Seven (37) Photographs*, 402 U.S. 363, 382 (1971) (Black, J., dissenting),
[95] R. 73 at 19.

HURLEY BURISH, S.C.

The court then turned to the production charge. It noted that "The *Stanley* decision explicitly discussed in-home possession only, but the Court's discussion of the First Amendment right to privacy in one's home could readily be extended to homemade production of obscene material too. Criminalizing the drawing of an obscene picture in one's own home arguably isn't compatible with *Stanley*'s privacy analysis."[96] Yet it held that it would "decline to extend *Stanley* to the production of obscene virtual child pornography charged here."[97] The government then filed this interlocutory appeal challenging the dismissal of the possession count.

---

[96] *Id.*
[97] *Id.* at 20.

## V.     Summary of the argument.

Free speech and the privacy of the home are well-established bastions of constitutional protection, and this case centers on both. *Stanley* clearly enshrines the concept that there is a First Amendment right to possess obscene material within the home. While later cases do not extend these protections to depictions of *real* children, *nothing* in *Stanley* limits that right to only "adult" obscenity. The district court recognized as much and correctly dismissed the possession counts.

In response, the government does everything it can to escape *Stanley*'s clear holding and consistent application. To that end, all of the cases the government relies on, address images depicting *real* children. That distinction sets this case apart: there were no real children, and the limitations imposed by those cases do not apply. And the government's attempt to read *Stanely* so narrowly as to limit its protections to only depictions of adult obscenity must be rejected. No case provides that sort of content-based limitation. Instead, *Stanley* provides precisely what it says: a fundamental right to in-home possession of obscene materials. To overcome that right, the government must satisfy strict scrutiny. It has not made that showing. Instead, the government asks this Court to do what the district court refused to do: overrule Supreme Court precedent. The district court recognized these fundamental errors in the government's argument, and rightly dismissed Anderegg's possession count. This Court should do the same and affirm the district court's judgment.

21

**VI. Argument: prosecuting Anderegg for possessing obscene materials inside his home violates the First Amendment protections in *Stanley*.**

The defense moved to dismiss the possession count, making an as-applied First Amendment challenge to § 1466A as it relates to Anderegg's right to possess obscene materials inside the home.[98] The steps for analyzing an as-applied challenge are as follows. First, the matter must be a constitutionally protected activity—that is *Stanley* must apply.[99] Once that is established, the Court must determine whether the government's restriction is content-based.[100] If so, strict scrutiny is triggered, and the government must show that the restriction is narrowly tailored to achieve a compelling government interest.[101] That is true regardless of whether the controversy is a First Amendment case or one involving a substantive-due-process right.[102] The government does not dispute that the materials charged were possessed in the home. Nor does the government dispute that *Stanley* protects a fundamental right. After all, *Stanley* is grounded on the First Amendment and there are no second-class constitutional rights.[103] So the application of § 1466A to Anderegg's activities inside the home is subject to strict scrutiny. And this Court reviews de novo the district court's decision to dismiss the possession counts.[104]

---

[98] R. 52 at 39; R. 40.

[99] *See Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 790-91 (2011).

[100] *Reed v. Town of Gilbert, Arizona*, 576 U.S. 155, 163-64 (2015).

[101] *Id.* at 171.

[102] *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997); *Reno v. Flores*, 507 U.S. 292, 302 (1993).

[103] *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 71 (2022).

[104] *See Peel v. Atty Reg. & Discipline Com'n of Illinois*, 496 U.S. 91, 108 (1990); *United States v. Greve*, 490 F.3d 566, 570 (7th Cir. 2007).

HURLEY BURISH, S.C.

### A.    *Stanley* provides protection to possessing obscene materials in the home.

The first step in the analysis is pretty easy and it centers on the rights that *Stanley* protects, and whether that case applies. The brief overview of obscenity law and *Stanley* (set out above) makes it clear what *Stanley* protects.[105] "[T]he States retain broad power to regulate obscenity; that power simply does not extend to mere possession by the individual in the privacy of his own home."[106] That protection is fully consistent with the protections the law has traditionally offered the home—a point that has been captured with Blackstone's simplicity (a man's home is his castle), Pitt's verve (the wind may enter but the king may not), and the Supreme Court's directness: "the Constitution extends special safeguards to the privacy of the home, just as it protects other special privacy rights such as those of marriage, procreation, motherhood, child rearing, and education."[107] Simply put, the home enjoys special privacy rights.[108] Thus, *Stanley* recognized the protection for possession of obscene materials *inside* the home.[109] Those foundational points are irrefutable.

In an effort to escape that logic, the government argues that *Stanley* doesn't apply to *all* obscene materials inside the home—just those dealing with adults—and *Stanley* doesn't apply to this prosecution because there is a jurisdictional link: the computer he possessed the images on had moved in interstate commerce. There are two problems with

---

[105] *See supra*, Section I.B.

[106] *Stanley*, 394 U.S. at 568.

[107] 3 W. Blackstone, *Commentaries on the Laws of England*, 288 (1768); *see also* Edward Coke, *Selected Writings of Sir Edward Coke*, vol. I (1604); William Pitt, Earl of Chatham, *Speech on the Excise Bill, House of Commons* (Mar. 1763); *United States v. Orito*, 413 U.S. 139, 142-143 (1973).

[108] *Orito*, 413 U.S. at 142-143.

[109] *Stanley*, 394 U.S. at 568.

the government's arguments. First, the cases it relies on don't *actually* say what the government wants it to say—no case limits *Stanley* to protecting a subset of obscenity within the home. Second, neither *Stanley,* nor any case, touches upon (in the least) the idea that a jurisdictional link would undermine a constitutional protection. Each of those points is addressed in turn and not one of them comes close to shaking the conclusion that *Stanley* means precisely what it says: "[the State's] power simply does not extend to mere possession by the individual in the privacy of his own home."[110]

### i.    There is no support for the government's attempt to cabin *Stanley* to *only* adults.

The government argues that the district court overread *Stanley* to provide protection for obscene materials beyond those involving adults.[111] In support, it makes three points: first, that *Stanley* has to be limited to its facts; second, that to do otherwise is to read the case contrary to how Supreme Court precedent must be applied; and third that courts have uniformly recognized that *Stanley* concerned only adult obscenity. [112]

To the first point, the government describes the key issue in *Stanley* as follows: "*Stanley* is best read as applying only to obscene materials depicting adults—not children (real or AI generated) engaging in sexually explicit activity."[113] But *Stanley* doesn't apply to *real* children—images of real children are verboten regardless of whether they are obscene or possessed in the home.[114] And *Stanley* was not limited to a specific type of

---

110 *Id.*
111 Govt. Br. at 26.
112 *Id.*
113 Govt. Br. at 27.
114 *See Ferber*, 458 U.S. at 764.

obscene image or medium. Obscenity includes material depicting adults, material depicting minors that are not actual children, material depicting sadomasochism, material depicting bestiality, even materials involving animal abuse.[115] And those images can be captured on any medium—film, photography, needlepoint, books, or AI.[116] Anything that is obscene (regardless of the content or the medium) is protected *inside* the home.[117] There is simply *no* basis to read *Stanley* in such a limited fashion—as though it started and stopped with a person's right to watch a porno on an old reel-to-reel in his basement. Rather, *Stanley's* protections are divorced from a specific content and specific medium and instead rest on a specific principle governing a specific place: the home.[118]

Second, the government argues that reading *Stanley* to protect more than just adult obscenity is inconsistent with how courts are supposed to read Supreme Court precedent.[119] To support that point, it splices a few inapplicable quotes, from a few inapplicable cases, and ignores the *entire* body of applicable case law that's been developed in how lower courts are supposed to read Supreme Court precedent.[120]

The government's argument begins with the premise that *Stanley* has been called a "narrow decision that should not be read too broadly."[121] That's an accurate quote from

---

[115] *See, e.g.*, 18 U.S.C. § 48; *United States v. Richards*, 755 F.3d 269, 277 (5th Cir. 2014); *see also*, *State v. Bonynge*, 450 N.W.2d 331, 334-35 (Ct. App. MN. 1990) (briefly discussing the lack of First Amendment protections for bestiality).

[116] *See Kaplan v. California*, 413 U.S. 115, 119 (1973) ("no distinction was made as to the medium of the expression"); *Manual Enterprises, Inc. v. Day*, 370 U.S. 478 (1962) (magazines); *Mishkin v. State of N.Y.*, 383 U.S. 502, 503 (1966) (books); *Paris Adult Theater I v. Slaton*, 413 U.S. 49 (1973) (films).

[117] *Miller*, 413 U.S. at 23–25.

[118] *Stanley*, 394 U.S at 565.

[119] Govt. Br. at 13.

[120] Govt. Br. at 26.

[121] Govt. br. at 13.

HURLEY BURISH, S.C.

*Osborne.* But the quote has to be read for what it held: *Stanley* doesn't apply to possession of child pornography inside the home.[122] We all agree: with real children there is no First Amendment protection—geographic or otherwise.[123] But Anderegg is (again) charged with virtual images, so *Osborne* and *Ferber* analogies don't apply. From there, the government quickly transitions to what it says is the Supreme Court's "repeated caution that its opinions must be read in the context of the issue presented for resolution and that doing otherwise risks applying the opinion to facts and issues not fully considered."[124] Fair enough. And it backs that point up with a string cite before quoting *Brown v. Davenport* for the principle that "respect for past judgments also means respecting their limits."[125]

There are cases when courts forget that principle and err in their reading of precedent. For instance, in *Thurston*, the Supreme Court held that the circuit court erred when it "confused the factual contours" of precedent with its "unmistakable holding."[126] The Supreme Court has been clear: lower courts are not to "confine [precedent] to its facts or otherwise cabin a clear statement from the Supreme Court."[127] Lower courts don't get to overrule or modify the Supreme Court's clear statements.[128] When "there is nothing in [a precedent] to limit the Constitutional precepts and legal tests discussed therein to their

---

[122] *Osborne v. Ohio*, 495 U.S. 103, 108-09 (1990).
[123] *Ferber*, 458 U.S. at 764-65.
[124] Govt. Br. 27.
[125] Govt. Br. at 27 (citing *Brown v. Davenport*, 596 U.S. 118, 141 (2022)).
[126] *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535 (1983) (per curium).
[127] *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 809 F.3d 1282, 1288 (Fed. Cir. 2015).
[128] *File v. Martin*, 33 F.4th 385, 392 (7th Cir. 2022).

facts," it isn't for a lower court to restrain the reach of those precepts and tests.[129] Put differently, when a precedent has "direct application," lower courts must faithfully follow it—even if they have some misgivings or believe the precedent is in tension with other authorities.[130] After all, "The Supreme Court can adjust or amend its own precedents at its discretion. *Inferior courts have no such luxury*."[131]

Those principles are reflected in the *entire* quote from the *Brown v. Davenport* case—the very case that the government quotes and relies on. Recall the government's quote: "respect for past judgments also means respecting their limits."[132] The rest of the paragraph in *Brown* provides the missing context: "This Court has long stressed that the language of an opinion is not always to be parsed as though we were dealing with [the] language of a statute."[133] It then noted that the dissent and petitioner would have them "override a lawful congressional command" on "the basis of a handful of sentences extracted from decisions that had no reason to pass on the argument Mr. Davenport presents today."[134] The Court continued: "We neither expect nor hope that our successors will comb these pages for stray comments and stretch them beyond their context—all to justify an outcome inconsistent with this Court's reasoning and judgments and with Congress's instructions."[135] To be clear, that's the government's own case, and it's rejecting precisely what the government is trying to do here: stretching stray quotes from

---

[129] *Christian Faith Fellowship Church v. Adidas AG*, 841 F.3d 986, 993 (Fed. Cir. 2016).
[130] *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 137 (2023).
[131] *United States v. Rahimi*, 117 F.4th 331, 334 (5th Cir. 2024) (Ho, J., concurring) (emphasis added).
[132] *Davenport*, 596 U.S. at 142.
[133] *Id.*
[134] *Id.*
[135] *Id.*

Hurley Burish, S.C.

other cases to limit *Stanley*'s plain holding. Instead of reading *Stanley* for what it clearly says and clearly provides—a constitutional right to possess obscene materials inside the home—the government has plucked out and then spliced quotes to reach "an outcome inconsistent with the Court's reasoning and judgments."[136]

Third, the government's creative use of quotations isn't limited to Supreme Court precedent; it also uses particles of cases to argue that lower courts have uniformly recognized that *Stanley* was limited to adult depictions of obscene materials.[137] In the cases the government cites as limiting *Stanley* to adult-materials, it provides a litany of parentheticals with the phrase "depicting adults."[138] But the qualification (depicting adults) in those cases was used to distinguish *Stanley* from cases involving *actual* child pornography, not one type of obscenity from another.[139] Reading the cases, it's clear that the plucked out quotes the government uses are just shorthand to mean: not pornography produced using actual children. That is an uncontroversial point that the district court fully understood: "But *Osborne* isn't on point because the images here aren't of real children."[140] This chart compares the government's short version of quotes with the context needed to show what the cases were actually dealing with.

---

[136] *Id.*
[137] Govt. Br. at 27.
[138] Govt. Br. at 30.
[139] *Id.*
[140] R.75 at 18.

HURLEY BURISH, S.C.

| What the Government Says It Says | What It Actually Says |
|---|---|
| *Stanley* held that the government "may not criminalize the mere possession of obscene material involving adults."[141] | "The broad authority to proscribe child pornography is not, however, unlimited. … *[T]he child-protection rationale for speech restriction does not apply to materials produced without children*."[142] |
| First Circuit case cited *Stanley* for the proposition that "the Supreme Court has held that states cannot regulate the private possession of adult obscenity."[143] | "[W]e do not intend to express any view regarding as-applied challenges to statutes relating to the regulation of adult pornography."[144] |
| Third Circuit case distinguishing between "obscenity depicting adults" in *Stanley* and "child pornography."[145] | "The use of *children as subjects* of pornographic materials is harmful to the physiological, emotional, and mental health of the child."[146] |
| Sixth Circuit case describing *Stanley* as applying to "sexually explicit material featuring adults."[147] | "While it is true that private possession of sexually explicit material featuring adults is deemed to be a constitutional right, Mr. Kussmaul was convicted of using the mails illegally, not of possessing obscene material."[148] |
| "In *Stanley*, the Court found that the first amendment protected private possession of obscene adult material in the home."[149] | "In *Stanley*, the Court found that the first amendment protected private possession of obscene adult material in the home. However, more recently in *New York v. Ferber*, the Court recognized that 'classifying child pornography as a category of material outside the protection of the First Amendment [was] not incompatible with [its] earlier decisions.' We need not discuss this issue further[.]"[150] |

---

[141] Govt. Br. at 30 (citing *United States v. Williams*, 553 U.S 285, 288-89 (2008).

[142] *Williams*, 553 U.S. at 289 (emphasis added).

[143] Govt. Br. at 30 (citing *United States v. Morales-de Jesus*, 372 F.3d 6, 18 n.10 (1st Cir. 2004)).

[144] *United States v. Morales-de Jesus*, 372 F.3d 6, 18 n.9, 10 (1st Cir. 2004) (internal citations omitted).

[145] Govt. Br. at 30. (citing *United States v. Knox*, 32 F.3d 733, 750 (3d Cir. 1994)).

[146] *Knox*, 32 F.3d at 750 (emphasis added) (cleaned up).

[147] Govt. Br. at 30 (citing *United States v. Kussmaul*, 987 F.2d 345, 350 n.5 (6th Cir. 1993) (*Stanley* applies to "sexually explicit material featuring adults")).

[148] *Kussmaul*, 987 F.2d at 350 n.5 (internal citation omitted).

[149] Govt. Br. at 30 (citing *United States v. Richardson*, 856 F.2d 644, 648 (4th Cir.1988)).

[150] *Richardson*, 856 F.2d at 647–48.

Hurley Burish, S.C.

Those cases don't supply the government with the precedent they want (or need) to cabin *Stanley* as only applying to reel-to-reel porn featuring adults in a guy's basement. Put differently, there is not (as the government argues) a uniform understanding in the lower courts that *Stanley* protects only a subset of obscene materials.

### ii.     There is no support that a jurisdictional link undermines a First Amendment right.

The government's fallback argument for not applying *Stanley* is that this prosecution is different: it's federal, there's a jurisdictional link. The computer was moved out of state. But that argument misses the point in two ways. First, it misconceives the effect of the statute's jurisdictional element. The jurisdictional element is simply what allows Congress the power to criminalize obscene materials. Congress has no general police power — it can't punish felonies generally.[151] And so, there has to be a jurisdictional link.[152] But the jurisdictional link doesn't otherwise invade (or override) constitutional protections. After all, if a person has a First Amendment right to protest or speak on a street corner that no state can abridge, it couldn't suddenly be okay for a federal prosecution if the sign the protestor waved or the megaphone she carried was made in a different state. By the same token, the right to possess obscene materials in a person's home doesn't become meaningless if the paper it's printed on or the computer it's created on came from out of state.

Second, the government's argument would render *Stanley* meaningless. As the district court aptly noted, "If the jurisdictional element were enough to overcome *Stanley*,

---

[151] *See United States v. Morrison*, 529 U.S. 598, 617 (2000).

[152] *Id.* at 610.

HURLEY BURISH, S.C.

*Stanley* would be a dead letter."[153] And in support of that fact it quoted the Eleventh Circuit's decision in *Ostrander*, where the court held: "Therefore, the First Amendment protects the private possession in one's own home of obscene material depicting virtual minors, *so long as no real children are victimized*."[154] To be clear, in *Ostrander*, the court didn't follow the line "so long as no real children are victimized" with an asterisk adding "or any part of the image—the paper, the ink, the pen—were made out of state." And the reason the court didn't is because whether the paper or the computer came from out of state doesn't affect the constitutional protections *Stanley* offers. Again, the government's power "*simply does not extend to mere possession by the individual in the privacy of his own home*."[155]

*     *     *     *     *

In sum, *Stanley* provides a fundamental First Amendment right to possess obscene materials inside the home. Whether the government attempts to criminalize in-home possession of obscene materials involving adults, children, or even animals (there's a statute on that), it is protected, so long as the possession occurs *inside* the home. None of the government's cases undermine that point. Instead, the case law fully supports that *Stanley* means what it says and that it provides a right to possess obscene materials in the home. And when a person has a fundamental right that is protected under the

---

[153] R. 73 at 19.
[154] R. 73 at 19 (citing *Ostrander*, 114 F.4th at 1261).
[155] *Stanley*, 394 U.S. at 568.

HURLEY BURISH, S.C.

Constitution (as this is), then the government's infringement of that right is subject to strict scrutiny.[156]

> **B.**    **The government cannot establish a compelling need to overcome the First Amendment protections in _Stanley_.**

The first step in the analysis is: does _Stanley_ apply? That's established. The district court knew it, the case law supports it, and there is no reason _Stanley_ doesn't provide the precise protections it says it does: "a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch."[157] The question then is whether the government can establish a compelling need to overcome Anderegg's right. To that end, it's important to stress two points. First, the government's brief reads as though it's putting forth a quasi-rational basis review—it's not defending what Congress _actually_ did and found; it's speculating what its current needs are and the dangers that may come with AI and virtual images.[158] Second, the government forgets (or ignores) that each of the purported reasons it's latched on to were rejected in _Free Speech Coalition_ as insufficient to overcome a First Amendment challenge.[159] As explained below, neither of those arguments can overcome the fundamental protections that the First Amendment provides to obscene material inside the home.

---

[156] _See Washington v. Glucksberg_, 521 U.S. 702, 720 (1997); _Reno v. Flores_, 507 U.S. 292, 302 (1993).
[157] _Stanley_, 394 U.S. at 565.
[158] Govt. Br. at 31-33.
[159] _Compare_ Govt. Br. at 8; _with Free Speech Coalition_, 535 U.S. at 258.

i.     **The government cannot meet the demands of strict scrutiny.**

Concerning the first point, we're dealing with a First Amendment protection. That's clear. And the government is arguing that the statute can reach past that protection based on the content of the material—namely, if the content involves virtual images of minors, then the protections disappear.[160] That is a content-based restriction. Adult obscenity (virtual or real) gets different protections from virtual images involving minors. And when a statute infringes on a First Amendment right based on the subject's content, then strict scrutiny applies.[161] That would be true whether *Stanley* is considered a First Amendment right or a substantive-due-process right.[162]

The government's argument for overcoming that protection is not, however, couched in the language of strict scrutiny. Instead, it provides a governmental need— protecting children—but doesn't explain (or argue) in the least that unless we reach into the home that need can't be achieved. In a word, it doesn't argue that criminalizing possession of obscene material within the home is the least restrictive means available to achieve its goal. While most of the government's four proffered "compelling reasons" were addressed in *Free Speech Coalition,* it's worth (in this section) addressing the underlying fallacy in all of them. All of the purported needs for overriding *Stanley* rest on the idea that "offenders may use images of the type that Anderegg possessed, like they commonly use similar-type images showing actual children, to groom minors into

---

[160] Govt. Br. at 14.
[161] *Reed v. Town of Gilbert*, 576 U.S. 155, 163-64 (2015).
[162] *See e.g. Reno v. Flores*, 507 U.S. 292, 301-02 (1993).

33

engaging in sexually explicit conduct."[163] Each of the other proffered reasons is a variant of that argument.

Here's the problem: there's already a statute directly on point that criminalizes the conduct of transferring obscene images to minors.[164] And if *anyone* goes outside the home with these materials to show them to minors, *Stanley's* protections are lost. So, the purported need (stopping the grooming of children by showing them these images) doesn't have anything to do with *Stanley's* protections. If Anderegg leaves his home to show the images to kids, the protection is lost; if he stays inside his home and shares them with kids online, the protection is lost. So in a very real sense, whatever the government's compelling needs are, they already have the means to achieve them *without* invading the sanctuary of the home and criminalizing Anderegg's possession of obscene materials inside the home.

What's more, *all* of the government's purported reasons come back to problems that the government is proffering—not what Congress decided it needed to implement (regardless of *Stanley*) to protect society. That's critical. Under rational basis, the government can conjure up what Congress may have been thinking, but not under strict scrutiny.[165] Under the proper analysis, the government had to set out why Congress felt that the compelling need had to infringe on the First Amendment rights and this Court must analyze whether those are the least restrictive means available.[166] It hasn't done that.

---

[163] Govt Br. at 15.
[164] 18 U.S.C. § 1470.
[165] *Reed v. Town of Gilbert*, 576 U.S. at 171; *Free Speech Coalition, Inc. v. Paxton*, 145 S.Ct. 2291, 2302 (2025).
[166] *Paxton*, 145 S.Ct. at 2302.

HURLEY BURISH, S.C.

And it can't come in with the reply brief and try to do so. Indeed, there's nothing in Congress's findings for § 1466A about *Stanley*—we checked.[167]

### ii. The Supreme Court has already rejected all of the government's proffered reasons for infringing upon a person's first Amendment rights.

That leads to the second point that the district court stressed and that illustrates the government doesn't actually have a compelling need that overcomes *Stanley*'s constitutional protection. In *Free Speech Coalition,* the question was whether virtual pornographic images of minors which were "indistinguishable" from real images could be criminalized—regardless of whether they were obscene.[168] There, the government offered four reasons why that didn't violate the First Amendment:

- Pedophiles may use virtual child pornography to seduce children.[169]

- Virtual child pornography whets the appetites of pedophiles and encourages them to engage in illegal conduct.[170]

- Eliminating the market for pornography produced using real children necessitates a prohibition on virtual images as well.[171]

- The possibility of producing images by using computer imaging makes it very difficult to prosecute those who produce pornography by using real children.[172]

---

[167] PROTECT Act, S. 151, 108th Cong. § 2 (2003).
[168] *Free Speech Coalition*, 535 U.S. at 240.
[169] *Id.* at 251.
[170] *Id.* at 253.
[171] *Id.* at 254.
[172] *Id.*

Here, the government offers the *same* four reasons for why *Stanley* can be overcome.[173] It's simply reheated the argument from *Free Speech Coalition*. But, as noted above, *Free Speech Coalition* addressed and rejected each of those policy reasons; the quotes on the right are from the opinion:

| Rationale | What the Supreme Court had to say about it |
|---|---|
| Offenders could use AI-generated minors to groom or entice children | "[T]he Government may not prohibit speech on the ground that it may encourage pedophiles to engage in illegal conduct."[174] |
| Market deterrence theory | Rejecting this theory because if virtual images were "indistinguishable" from real images then "the illegal images would be driven from the market by the indistinguishable substitutes," *reducing* the demand for pornography that depicts actual children.[175] |
| Technology makes it harder to prove the images depict real children | Restricting an individual's "right to read or observe what he pleases … may not be justified by the need to ease the administration of otherwise valid criminal laws."[176] |
| "Photorealistic" depictions interfere with legitimate victim rescue efforts | "The necessary solution, the argument runs, is to prohibit both kinds of images. The argument, in essence, is that protected speech may be banned as a means to ban unprotected speech. This analysis turns the First Amendment upside down."[177] |

Again, those four reasons mirror what the government has put forth in its brief. And all of those reasons were not sufficient to overcome a First Amendment challenge.

---

[173] R. 64 at 17–20.
[174] *Free Speech Coalition*, 535 U.S. at 253–54.
[175] *Id.* at 254.
[176] R. 64 at 10 (quoting *Stanley*, 394 U.S. at 566, 568); *id.*
[177] *Free Speech Coalition*, 535 U.S. at 251.

HURLEY BURISH, S.C.

In response, the government argues that *Free Speech Coalition* is different because there the First Amendment consideration was whether the images had to be obscene.[178] That's true.[179] But it's a distinction without a difference. In both *Free Speech Coalition* and here, the issue was First Amendment rights and whether the government's purported interests were sufficient to overcome them. They're not. And if more is needed to reject the government's argument, the Court simply has to read *Free Speech Coalition*. It should be clear that First Amendment rights don't bow to the concerns proffered by the government.

*     *     *     *     *

When it comes to overcoming the protections *Stanley* offers the home, none of the government's arguments come close to establishing that criminalizing possession of obscene materials (involving virtual children) inside the home is the least restrictive means of achieving a compelling governmental interest. It's not. Leave the home with the materials and the protection is lost. So regardless of whether the fear is grooming children or market deterrence, those fears don't come into play when the protections *Stanley* provides are honored. And the government's other reasons don't have anything to do with possession inside the home. Instead, this Court should find (as the Supreme Court did in *Free Speech Coalition*) that the government's proffered reasons cannot overcome the First Amendment.

---

[178] Govt. Br. at 32.
[179] *Free Speech Coalition*, 535 U.S. at 254–55.

HURLEY BURISH, S.C.

**VII.    Conclusion.**

Coming back to the introduction's theme: as much as this case is about the First Amendment and the headline grabbing fact that it's the first AI generated obscenity prosecution, it's really a case about applying Supreme Court precedent. Times change. Supreme Court precedent can (and does) get overruled. And the Supreme Court may take a fresh look at *Stanley*; it may even think *Free Speech Coalition* has to be dialed back — AI is different from the "virtually indistinguishable" materials at issue in *Free Speech Coalition*. It's hard to see how virtually indistinguishable with AI is any different from virtually indistinguishable with normal computing, but the Supreme Court may do it. But it's not for this Court to decide the issue. Instead, this Court has one job: apply the Supreme Court's precedent. Applying the precedent means that *Stanley* protects the right to possess obscene materials inside the home, and it means that all of the government's proffered reasons for violating that right cannot be overcome. Thus, the district court must be affirmed.

Dated this 15th day of August 2025, in Madison, WI.

Respectfully submitted,

STEVEN ANDEREGG, *Defendant-Appellant,*

*s/ Joseph A. Bugni*
Joseph A. Bugni
*Wisconsin Bar No.* 1062514
Kaitlyn Spiegl
HURLEY BURISH, S.C.
P.O. Box 1528
Madison, WI  53701-1528
jbugni@hurleyburish.com
(608) 257-0945

38

HURLEY BURISH, S.C.

**Certificate of Compliance**

Pursuant to Fed. R. App. P. 32(a)(7), counsel for Anderegg certifies that this brief complies with the type-volume limitations of Fed. R. App. P 32(a)(7)(B), because it contains no more than 14,000 words. Specifically, all portions of this brief other than the disclosure statement, table of contents, table of authorities, and certificates of counsel contain 8,026 words.

Dated: August 15, 2025

s/ *Joseph A. Bugni*
_____
Joseph A. Bugni

Hurley Burish, S.C.

**Certificate of Service**

Counsel for Anderegg hereby certifies that on today's date, a digital version of this brief was delivered via this Court's CM/ECF system to opposing counsel in this appeal.

Dated: August 15, 2025

s/ *Joseph A. Bugni*

Joseph A. Bugni

Hurley Burish, S.C.