No. 25-1354

United States Court of Appeals
For the Seventh Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

*v.*

STEVEN ANDEREGG,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Western District of Wisconsin,
Case No. 24-cr-50,
The Honorable James D. Peterson, Presiding

**BRIEF OF CENTER FOR ONLINE SAFETY AND LIBERTY AS AMICUS CURIAE
IN SUPPORT OF DEFENDANT-APPELLEE STEVEN ANDEREGG**

Peter Moyers
(Counsel of Record)
601 Sawyer Terrace #5041
Madison, Wisconsin 53705
(608) 286-8399
info@moyerslawfirm.com

Jeremy Malcolm
Of Counsel

Ira Ellman
Of Counsel

Zachary Margulis-Ohnuma
Of Counsel

1

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1354

Short Caption: United Staes v. Anderegg

 To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

 The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

The Center for Online Safety and Liberty

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Moyers Law Firm

(3) If the party, amicus or intervenor is a corporation:

 i) Identify all its parent corporations, if any; and

  None

 ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

  None

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A

Attorney's Signature: Peter Moyers  Date: 09/09/2025

Attorney's Printed Name:  Peter Moyers

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address:  601 Sawyer Terrace #5041, Madison, WI 53705

Phone Number: (608) 286-8399  Fax Number:

E-Mail Address: info@moyerslawfirm.com

rev. 12/19 AK

# TABLE OF CONTENTS

**CORPORATE DISCLOSURE STATEMENT**   4

**TABLE OF AUTHORITIES**   5

**INTEREST OF AMICUS CURIAE**   6

**SUMMARY OF ARGUMENT**   7

**ARGUMENT**   8

    I.   *Stanley v. Georgia* Establishes a Robust Constitutional Right to Possess Obscene Material in the Home   8

    II.   Distinctions Based on Depictions of Minors Are Inconsistent with *Stanley* and *Free Speech Coalition*   9

    III.   Prosecuting Private Production Under § 1466A Impermissibly Expands Child Pornography Doctrines   11

    IV.   The Government's Approach Risks Criminalizing Private Thought and Expression   13

    V.   Policy Concerns Do Not Justify Curtailing Constitutional Rights 16

    VI.   The District Court's Ruling Aligns with Broader Constitutional Principles   18

**CONCLUSION**   19

**CERTIFICATE OF COMPLIANCE**   21

**CERTIFICATE OF SERVICE**   22

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the Center for Online Safety and Liberty states that it has no parent corporation and no publicly held company owns 10% or more of its stock. No party or counsel for a party authored this brief in whole or in part or contributed money that was intended to fund preparing or submitting this brief. No person other than the amicus curiae, its members, or its counsel contributed money that was intended to fund preparing or submitting this brief.

/s/    Peter    Moyers

Peter Moyers

   (Counsel of Record)

/s/    Jeremy    Malcolm

Jeremy Malcolm

/s/    Ira    Ellman

Ira Ellman

/s/ Zachary Margulis-Ohnuma

Zachary Margulis-Ohnuma

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Free Speech Coalition* 535 U.S. 234 (2002)    7, 9-11, 15-17

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973), 612    13

*Brown v. Entertainment Merchants Association*, 564 U.S. 786 (2011) 10, 17

*Carpenter v. United States*, 138 S. Ct. 2206 (2018), 2214    14, 17

*Graham v. Florida*, 560 U.S. 48 (2010)    12, 17

*Kyllo v. United States*, 533 U.S. 27, 31 (2001)    14

*Lawrence v. Texas*, 539 U.S. 558 (2003), 562    12

*Miller v. California*, 413 U.S. 15 (1973)    7, 9

*Osborne v. Ohio*, 495 U.S. 103 (1990)    11

*Payton v. New York*, 445 U.S. 573, 587 (1980)    16

*Robinson v. California*, 370 U.S. 660 (1962), 667    13

*Stanley v. Georgia* 394 U.S., 565–68    7-12, 15, 17

*Texas v. Johnson*, 491 U.S. 397, 414 (1989)    11

**Statutes**

18 U.S.C. § 1466A    6, 11, 17

## INTEREST OF AMICUS CURIAE

The **Center for Online Safety and Liberty (COSL)**, a nonprofit dedicated to balancing online safety and liberty, submits this amicus curiae brief in support of Defendant-Appellee Steven Anderegg. This brief urges the Court to affirm the district court's dismissal of the possession charge under *Stanley v. Georgia*, 394 U.S. 557 (1969), and to hold that prosecuting the private production of virtual obscene material under 18 U.S.C. § 1466A violates core constitutional protections for privacy and expressive conduct within the home.

COSL is a nonprofit dedicated to empowering individuals and communities to thrive online by building safer digital spaces, fostering creativity, combating harm, and championing digital rights. COSL serves as an incubator for independent projects that tackle pressing issues such as age verification mandates, Section 230 rollbacks, encryption battles, and content-scanning overreach, while also developing open-source trust-and-safety tools and nurturing inclusive online communities. No party or counsel for a party authored or contributed to this brief, nor made any monetary contribution to its preparation.

## SUMMARY OF ARGUMENT

The district court correctly dismissed the possession charge against Steven Anderegg, as *Stanley v. Georgia* establishes an unequivocal constitutional right to possess obscene material in the privacy of one's home. The government's attempt to carve out exceptions for virtual depictions involving minors contradicts *Stanley*'s broad privacy protections and the Supreme Court's holding in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), which safeguards virtual images that do not involve real children. Moreover, prosecuting the private production of such material under § 1466A impermissibly extends child pornography doctrines to constitutionally protected expressive conduct, chilling intellectual freedom, and intruding into the sanctity of the home. The statute also fails traditional obscenity analysis under *Miller v. California* when applied to private, non-distributed materials and imposes disproportionate penalties that violate constitutional principles of proportionality. This Court should affirm the dismissal of the possession charge and declare § 1466A unconstitutional as applied to private production, preserving the fundamental liberties at the heart of our constitutional order.

**ARGUMENT**

## I.    *Stanley v. Georgia* Establishes a Robust Constitutional Right to Possess Obscene Material in the Home

In *Stanley v. Georgia*, the Supreme Court unequivocally held that the First and Fourteenth Amendments protect the right to possess obscene material within the privacy of one's home. 394 U.S. at 565–68. The Court emphasized that the government lacks any legitimate interest in regulating private possession, as such regulation intrudes upon "the right to receive information and ideas" and "the right to be free, except in very limited circumstances, from unwanted governmental intrusions into one's privacy." *Id.* at 564. This protection is rooted in the sanctity of the home as a bastion of personal autonomy and intellectual freedom, insulated from state overreach.

The government's attempt to limit *Stanley* to adult-only obscenity misreads the decision's sweeping rationale. *Stanley* did not hinge on the specific content of the material but on the broader principle that the state may not criminalize private possession absent a compelling justification tied to tangible harm. *See id.* at 565 ("Whatever the power of the state to control public dissemination of ideas inimical to the public morality, it cannot constitutionally premise legislation on the desirability of controlling a

person's private thoughts."). The district court's dismissal of the possession charge aligns with this foundational precedent, and this Court should affirm that *Stanley* governs regardless of the material's subject matter.

Furthermore, the application of the traditional obscenity standard established in *Miller v. California*, 413 U.S. 15 (1973), becomes fundamentally problematic when applied to purely private, non-distributed materials. The first prong of the *Miller* test—whether "the average person, applying contemporary community standards," would find the work appeals to the prurient interest—is inherently inapplicable to private materials that never reach the community. When content remains entirely within the confines of one's home, no "community standards" are implicated, rendering the *Miller* test unsuitable for private possession and production cases. This further reinforces the principle that traditional obscenity doctrines cannot justify intrusion into private expressive conduct within the home.

## II.    Distinctions Based on Depictions of Minors Are Inconsistent with *Stanley* and *Free Speech Coalition*

The government's argument that obscene material depicting minors falls outside *Stanley*'s protections is untenable. *Stanley*'s rationale does not permit content-based carve-outs that erode the right to privacy in the home.

Furthermore, the Supreme Court's decision in *Ashcroft v. Free Speech Coalition* forecloses the government's position. In *Free Speech Coalition*, the Court struck down provisions of the Child Pornography Prevention Act of 1996 that criminalized virtual images depicting minors, holding that such images are protected by the First Amendment when they do not involve real children or depict actual abuse. 535 U.S. at 250–51. The Court rejected the government's claim that virtual depictions could be banned based on speculative harms, emphasizing that "the First Amendment requires a more precise restriction" tied to actual harm. *Id.* at 258.

Here, the material at issue involves virtual depictions, not real minors, rendering the government's reliance on child protection rationales inapposite. *Free Speech Coalition* confirms that such material remains within the ambit of First Amendment protections, and *Stanley* extends those protections to private possession. By attempting to distinguish between types of obscene material, the government seeks to impose a content-based restriction that both *Stanley* and *Free Speech Coalition* prohibit. This Court should reject such an approach as contrary to settled constitutional law.

Moreover, the Supreme Court's decision in *Brown v. Entertainment Merchants Association*, 564 U.S. 786 (2011), where the Court struck down a

ban on selling violent video games to minors, reaffirms that depictions of fictional violence and other controversial content involving minors deserve robust First Amendment protection. The Court in *Brown* explicitly rejected the government's argument that depictions of violence toward minors, even in interactive media, fell outside First Amendment protection, noting that "esthetic and moral judgments about art and literature... are for the individual to make, not for the Government to decree." *Id.* at 790. This principle applies with even greater force to private, non-distributed creative expression.

### III. Prosecuting Private Production Under § 1466A Impermissibly Expands Child Pornography Doctrines

The government's application of 18 U.S.C. § 1466A to the private production of virtual obscene material conflates child pornography with constitutionally protected obscenity, contravening Supreme Court precedent. In *Osborne v. Ohio*, 495 U.S. 103 (1990), the Court upheld restrictions on possessing child pornography due to the state's compelling interest in preventing actual child abuse. *Id.* at 109–11. However, *Osborne*'s rationale is narrowly tailored to material depicting real minors and does not extend to virtual images, as clarified in *Free Speech Coalition*. 535 U.S. at 250.

Prosecuting the creation of virtual material under § 1466A thus lacks the compelling state interest required to override *Stanley*'s protections.

Moreover, criminalizing production within the home threatens expressive conduct that *Stanley* explicitly shields. The act of creating virtual material—whether through digital art, writing, or other media—constitutes a form of private expression integral to intellectual freedom. By targeting such conduct, § 1466A risks punishing thought itself, a result the Supreme Court has consistently rejected. *See, e.g., Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."). This Court should hold that § 1466A, as applied to private production, violates the First and Fourteenth Amendments.

Additionally, § 1466A imposes the same severe penalties for virtual depictions as for actual child pornography, violating fundamental principles of proportionality in sentencing. In *Graham v. Florida*, 560 U.S. 48 (2010), the Supreme Court emphasized that punishments must be proportionate to the offense and that "the concept of proportionality is central to the Eighth Amendment." *Id.* at 59. Where no actual child is harmed in the creation of

virtual content, imposing the same penalties as those for actual child exploitation creates a gross disproportion between the harm (if any) and the punishment. This severe sentencing scheme further demonstrates the constitutional infirmity of § 1466A as applied to privately produced virtual content.

### IV.     The Government's Approach Risks Criminalizing Private Thought and Expression

The government's expansive interpretation of § 1466A threatens to criminalize a broad range of private, expressive activities, chilling fundamental freedoms. For example, individuals who create virtual depictions as a means of processing personal trauma, exploring artistic expression, or documenting private thoughts could face prosecution under the government's theory. Such an outcome echoes the Supreme Court's warning in *Stanley* that the state may not "control the moral content of a person's thoughts." 394 U.S. at 565. The Court reaffirmed this principle in *Lawrence v. Texas*, 539 U.S. 558 (2003), striking down a statute criminalizing private consensual conduct and emphasizing that "liberty presumes an autonomy of self that includes freedom of thought, belief, expression, and certain intimate conduct." *Id.* at 562.

The prosecution of private production of fictional content bears disturbing similarities to criminalizing thought itself, raising concerns similar to those addressed in *Robinson v. California*, 370 U.S. 660 (1962), where the Court held that criminalizing status rather than conduct violates the Eighth Amendment. When § 1466A is applied to purely private, non-distributed virtual content, it effectively criminalizes the expressive manifestation of thoughts and ideas—a form of status crime incompatible with constitutional principles. As the Court noted in *Robinson*, "Even one day in prison would be a cruel and unusual punishment for the 'crime' of having a common cold." *Id.* at 667. Similarly, imprisonment for the private expression of thoughts, however disturbing, without any connection to actual harm, represents an unconstitutional intrusion into cognitive liberty.

Furthermore, § 1466A as applied to private production is substantially overbroad and therefore facially invalid under the doctrine established in *Broadrick v. Oklahoma*, 413 U.S. 601 (1973). The statute's reach extends far beyond any legitimate government interest in preventing actual harm to children, encompassing a significant amount of constitutionally protected speech and expression. This overbreadth creates an unacceptable chilling effect on protected speech, as individuals may refrain from engaging in

lawful expressive conduct for fear of prosecution. The First Amendment cannot tolerate such a sweeping restriction that "does not aim specifically at evils within the allowable area of state control but... sweeps within its ambit other activities that constitute an exercise" of protected constitutional rights. *Id.* at 612.

The government's position also raises serious Fourth Amendment concerns. By targeting material created and maintained within the home, the government seeks to police the most private sphere of individual life, undermining the "right of the people to be secure in their persons, houses, papers, and effects." U.S. Const. amend. IV; *see also Kyllo v. United States*, 533 U.S. 27, 31 (2001) ("At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."). For example, if the government is correct, a person who writes in a private journal about their experience of childhood sexual abuse could be criminalized both for producing and for possessing obscenity.

The unique technological aspects of this case implicate evolving Fourth Amendment jurisprudence regarding digital privacy. In *Carpenter v. United States*, 138 S. Ct. 2206 (2018), the Supreme Court recognized that

digital content requires enhanced constitutional protection, noting that "as technology has enhanced the Government's capacity to encroach upon areas normally guarded from inquisitive eyes, this Court has sought to 'assure preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted.'" *Id.* at 2214 (quoting *Kyllo*, 533 U.S. at 34). Private digital creations that never leave personal devices represent the modern equivalent of the papers and effects that the Founders sought to protect from government intrusion. The prosecution's approach here would effectively eliminate this sphere of digital privacy, contrary to the principles articulated in *Carpenter*.

This Court should reject the government's overreach to safeguard the intertwined protections of the First and Fourth Amendments.

## V.     Policy Concerns Do Not Justify Curtailing Constitutional Rights

The government invokes policy considerations, such as preventing grooming or combating trafficking, to justify its position. These concerns, while serious, do not override constitutional protections in the absence of direct harm. In *Free Speech Coalition*, the Supreme Court rejected similar arguments, holding that speculative fears about the potential misuse of

virtual material do not justify restricting First Amendment rights. 535 U.S. at 253–54. The Court noted that the government's proffered interests were "too attenuated" to sustain a blanket prohibition on protected speech. *Id.* at 254.

What the government seems to argue here is that the mere existence of the material creates the possibility it might later be used for unlawful purposes, such as grooming or trafficking. But that rationale proves far too much. The law already criminalizes those downstream uses, and amici do not dispute the government's authority to punish them directly. What the government seeks, instead, is to criminalize protected expression or private possession because it might facilitate some other offense. That is not attenuation so much as inversion: turning constitutionally protected activity into contraband on the basis of its hypothetical connection to prohibited conduct.

The logic is dangerously overbroad. By the same reasoning, the government could outlaw the private possession of handguns on the ground that such possession makes possible their unlawful use. Yet the Supreme Court has made clear that the Second Amendment protects private possession notwithstanding the undeniable risk that guns may be misused.

17

The constitutional protections at issue here—for free speech and privacy— are at least as fundamental as the protection of firearms, and the Court has already rejected attempts to collapse the distinction between possession and misuse in the First Amendment context.

In short, even if one could posit a logical nexus between possession of virtual material and the harms the government seeks to prevent, that nexus is insufficient to justify prohibition. The Constitution requires the government to target the harmful conduct itself, not to criminalize the antecedent possession of protected material on the theory that it might someday be used improperly. Absent a clear nexus to actual child abuse, the government's policy arguments cannot trump the constitutional guarantees articulated in *Stanley* and *Free Speech Coalition*. This Court should adhere to the Supreme Court's admonition that "the First Amendment bars the government from dictating what we see or read or speak or hear." *Id.* at 245.

## VI.    The District Court's Ruling Aligns with Broader Constitutional Principles

The district court's dismissal of the possession charge reflects a faithful application of *Stanley* and its progeny, reinforcing the broader constitutional principles of privacy, autonomy, and expressive freedom. The home remains

a constitutionally protected sanctuary where individuals may explore ideas, engage in private expression, and exercise intellectual autonomy without fear of government intrusion. *See Payton v. New York*, 445 U.S. 573, 587 (1980) ("The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home.").

By affirming the district court and striking down the application of § 1466A to private production, this Court would reaffirm the judiciary's role as a bulwark against governmental overreach. Such a ruling would preserve the delicate balance between state interests and individual liberties, ensuring that constitutional protections remain robust in the digital age.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's dismissal of the possession charge and hold that 18 U.S.C. § 1466A is unconstitutional as applied to the private production of virtual obscene material. The principles articulated in *Stanley v. Georgia* and *Ashcroft v. Free Speech Coalition* compel this result, safeguarding the fundamental rights to privacy, thought, and expression within the home. The government's

attempt to distinguish virtual depictions from other forms of protected speech fails under *Brown v. Entertainment Merchants Association*, while the disproportionate penalties imposed by § 1466A violate the principles established in *Graham v. Florida*. Moreover, the digital nature of the private expression at issue warrants heightened Fourth Amendment protection under *Carpenter v. United States*. Upholding these protections is essential to preserving the constitutional liberties that define our legal system.

Respectfully submitted,

/s/ Peter Moyers
Peter Moyers
(Counsel of Record)
601 Sawyer Terrace #5041
Madison, WI 53705
(608) 286-8399
info@moyerslawfirm.com


Jeremy Malcolm
Of Counsel

Ira Ellman
Of Counsel

Zachary Margulis-Ohnuma
Of Counsel

## CERTIFICATE OF COMPLIANCE

Counsel for the petitioner-appellant certifies that this brief complies with the type-volume limitations of Circuit Rule 29, because it contains no more than 7,000 words. Specifically, all portions of this brief other than the disclosure statement, table of contents, and certificate total 2,681 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

Date: September 18, 2025

Peter R. Moyers,
*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Peter R. Moyers,
Counsel for Amicus Curiae