No. 25-1354

---

In The United States Court Of Appeals
For The Seventh Circuit

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellant,**

v.

**STEVEN ANDEREGG,**

**Defendant-Appellee.**

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WISCONSIN, NO. 24-CR-50 (PETERSON, C.J.)

---

# GOVERNMENT'S PETITION FOR REHEARING EN BANC OR PANEL REHEARING

---


A. TYSEN DUVA
Assistant Attorney General

JOSH A. GOLDFOOT
Deputy Assistant Attorney General

WILLIAM G. CLAYMAN
Appellate Section

ROSS B. GOLDMAN
Acting Deputy Chief & Senior Appellate Counsel
Criminal Division
Child Exploitation & Obscenity Section
U.S. Department of Justice
1301 New York Ave. NW
Washington, DC 20530
(202) 532-4153

## TABLE OF CONTENTS


TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

RULE 40(B) STATEMENT ..... 1

ISSUE PRESENTED ..... 2

BACKGROUND ..... 3

I. LEGAL FRAMEWORK ..... 3

A. Overview ..... 3

B. *Stanley v. Georgia* ..... 3

C. *Ashcroft v. Free Speech Coalition* ..... 5

D. 18 U.S.C. § 1466A ..... 5

II. OFFENSE CONDUCT AND DISTRICT COURT PROCEEDINGS ..... 6

III. THE PANEL OPINION ..... 7

ARGUMENT ..... 9

I. THE PANEL'S DECISION IS WRONG ..... 9

A. Anderegg does not have a First Amendment right to use interstate commerce in furtherance of his possession of obscene images of AI-generated children engaging in sexually explicit conduct. ..... 9

B. *Free Speech Coalition* is inapposite because Section 1466A applies only to obscene—and therefore constitutionally unprotected—speech. ..... 13

II. THE ISSUE IS EXCEPTIONALLY IMPORTANT. ..... 16

CONCLUSION ..... 17

CERTIFICATE OF COMPLIANCE ..... 18

## TABLE OF AUTHORITIES

### Cases

*Ashcroft v. Free Speech Coalition*,
535 U.S. 234 (2002) ........................................ 1, 3, 5, 14, 15

*Brown v. Davenport*,
596 U.S. 118 (2022) ........................................ 10

*Cohens v. Virginia*,
19 U.S. (6 Wheat) 264 (1821) ........................................ 10

*Free Speech Coalition, Inc. v. Paxton*,
606 U.S. 461 (2025) ........................................ 3

*Int'l Brotherhood of Teamsters v. Hanke*,
339 U.S. 470 (1950) ........................................ 10

*Miller v. California*,
413 U.S. 15 (1973) ........................................ 3, 5

*New York v. Ferber*,
458 U.S. 747 (1982) ........................................ 3, 12

*Olivier v. City of Brandon*,
607 U.S. 552 (2026) ........................................ 10

*Osborne v. Ohio*,
495 U.S. 103 (1990) ........................................ 3, 4, 10, 11

*Paris Adult Theatre I v. Slaton*,
413 U.S. 49 (1973) ........................................ 4

*Smith v. United States*,
431 U.S. 291 (1977) ........................................ 4

*Stanley v. Georgia*,
394 U.S. 557 (1969) ........................................ 1, 3, 4, 12, 13

*Stanley v. State*,
224 Ga. 259 (Ga. 1968) ........................................ 3

*Turkiye Halk Bankasi A.S. v. United States*,
598 U.S. 264 (2023) ........................................ 10

*United States v. 12 200-Foot Reels of Super 8mm. Film*,
413 U.S. 123 (1973) .......... 4, 10

*United States v. Arthur*,
51 F.4th 560 (5th Cir. 2022) .......... 6

*United States v. Buie*,
946 F.3d 443 (8th Cir. 2019) .......... 6

*United States v. Orito*,
413 U.S. 139 (1973) .......... 4

*United States v. Reidel*,
402 U.S. 351 (1971) .......... 4, 16

*United States v. Schales*,
546 F.3d 965 (9th Cir. 2008) .......... 6

*United States v. Thirty-Seven (37) Photographs*,
402 U.S. 363 (1971) .......... 4

*United States v. Villard*,
885 F.2d 117 (3d Cir. 1989) .......... 5

*United States v. Whorley*,
550 F.3d 326 (4th Cir. 2008) .......... 6

*United States v. Williams,*
553 U.S. 285 (2008) .......... 4, 11

*United States v. Yashar*,
166 F.3d 873 (7th Cir. 1999) .......... 6

*Webster v. Fall*,
266 U.S. 507 (1925) .......... 13

**Statutes**

18 U.S.C. § 1466A .......... 1, 5, 6, 7

18 U.S.C. § 1470 .......... 7

18 U.S.C. § 2256 .......... 5

Fed. R. App. P. 40 .......... 2

**Other Authorities**

Bryan A. Garner et al.,
The Law of Judicial Precedent (2016) .......... 13

No. 25-1354

In The United States Court Of Appeals
For The Seventh Circuit

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

STEVEN ANDEREGG,

Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WISCONSIN

# GOVERNMENT'S PETITION FOR REHEARING EN BANC OR PANEL REHEARING

## RULE 40(B) STATEMENT

The panel held that *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), and *Stanley v. Georgia*, 394 U.S. 557 (1969), required it to invalidate 18 U.S.C. § 1466A(b)(1) as applied to Anderegg's commerce-connected, in-home possession of obscene, photorealistic images of AI-generated children engaging in sexually explicit conduct, on First Amendment grounds. This was error.

*Stanley* applies only to the mere private possession of obscene material depicting adults. But this case involves—and Section 1466A(b)(1) and (d)(4) will ever only involve—the *commerce-connected* possession of obscene material depicting *children*

*engaging in sexually explicit conduct*. Moreover, *Stanley* rejected a state justification that rested on the need to protect the adult viewer from the harms of viewing adult obscenity. Section 1466A(b)(1), in contrast, is a critical tool in advancing the compelling government interest in protecting children from sexual exploitation and abuse. These differences are constitutionally decisive.

*Free Speech Coalition* is inapposite. There, the Court rejected a government effort to create a new category of unprotected speech: child pornography that showed no actual child and that—critically here—was not obscene. In so doing, the Court held that the government's child-protection arguments were insufficient to unprotect this otherwise-protected category of speech. But Section 1466A solves this problem entirely by requiring proof that the material is obscene—and therefore unprotected. The government is not asking this Court to recognize a new category of unprotected speech; instead, the government's child-protection arguments are offered as one of the key reasons why this case does not fall within *Stanley*'s narrow confines.

The panel's as-applied invalidation on First Amendment grounds of a statute aimed at protecting children from sexual exploitation and abuse constitutes an issue "of exceptional importance," Fed. R. App. P. 40(b)(2)(D), warranting further review.

## ISSUE PRESENTED

Whether 18 U.S.C. § 1466A(b)(1), as applied to Anderegg's use of interstate commerce to possess in his home obscene, AI-generated images of children engaging in sexually explicit conduct, violates the First Amendment.

## BACKGROUND

### I. LEGAL FRAMEWORK

#### A. Overview

Obscene speech is unprotected under the First Amendment. *Free Speech Coalition, Inc. v. Paxton*, 606 U.S. 461, 471 (2025). Material is obscene if, taken as a whole, it "appeals to the prurient interest, is patently offensive in light of community standards, and lacks serious literary, artistic, political, or scientific value." *Free Speech Coalition*, 535 U.S. at 246 (citing *Miller v. California*, 413 U.S. 15, 24 (1973)). Child pornography—*e.g.*, images of actual children engaging in sexually explicit conduct—is also unprotected, regardless of whether it is obscene, and the First Amendment does not immunize its production, distribution, or possession, even in one's own home. *Osborne v. Ohio*, 495 U.S. 103 (1990); *New York v. Ferber*, 458 U.S. 747 (1982).

#### B. *Stanley v. Georgia*

In *Stanley*, the defendant was convicted of possessing in his home obscene films of adults engaging in sexual activity, in violation of Georgia's obscenity statute. 394 U.S. at 558-559; *Stanley v. State*, 224 Ga. 259, 259 (Ga. 1968). The Georgia statute reached the in-home possession of materials with no demonstrated connection to commerce. *See Stanley*, 394 U.S. at 558 n.1.

The Supreme Court reversed. Although the Court reiterated that obscene speech is unprotected, the Court found a First Amendment right to the "mere private possession" of obscene material "in the privacy of [one's] own home." *Stanley*, 394 U.S. at 568. In so doing, *Stanley* rejected Georgia's "weak" and "paternalistic" defense of

its statute, which rested primarily on "concern[s] that obscenity would poison the minds of its viewers." *Osborne*, 495 U.S. at 109-110; *see Stanley*, 394 U.S. at 565-566.

The Supreme Court has cautioned that "*Stanley* was a narrow holding" that "should not be read too broadly," *Osborne*, 495 U.S. at 108, and that "rests" on an "explicitly narrow and precisely delineated privacy right," *United States v. 12 200-Foot Reels of Super 8mm. Film*, 413 U.S. 123, 127 (1973); *see id.* at 128 (referencing "the precise, carefully limited holding of *Stanley*").

For example, the Court has stated that *Stanley* applies to obscene material "involving adults." *United States v. Williams*, 553 U.S. 285, 288-289 (2008). The Court has held that *Stanley* does not apply to the transportation, receipt, distribution, or importation of obscene material, even in furtherance of in-home possession, and that the government "retain[s] broad power to regulate obscenity," *United States v. Reidel*, 402 U.S. 351, 354-355 (1971) (quoting *Stanley*, 394 U.S. at 568). *See Smith v. United States*, 431 U.S. 291, 306-307 (1977); *12 200-Foot Reels*, 413 U.S. at 128; *United States v. Orito*, 413 U.S. 139, 141 (1973); *United States v. Thirty-Seven (37) Photographs*, 402 U.S. 363, 376 (1971) (plurality op.); *see also Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 69 (1973) ("[C]ommerce in obscene material is unprotected by any constitutional doctrine of privacy."). Finally, the Court has clarified that *Stanley* does not apply to child pornography depicting the sexual abuse of real children. *Osborne*, 495 U.S. at 108-111.

### C. *Ashcroft v. Free Speech Coalition*

In *Free Speech Coalition*, the Supreme Court held that the definition of "child pornography" then set forth in 18 U.S.C. § 2256(8)(B)—which reached non-obscene visual depictions that "appear[] to be" of a minor engaging in sexually explicit conduct—violated the First Amendment because it did not require proof either that the image showed an actual minor or that the image was obscene. *Free Speech Coalition*, 535 U.S. at 239-256. In so holding, the Court considered the government's child-protection arguments but concluded that they were insufficient to make protected speech—*i.e.*, imagery that shows no identifiable child and is not obscene—unprotected. *Ibid.*

### D. 18 U.S.C. § 1466A

In response to *Free Speech Coalition*, Congress enacted 18 U.S.C. § 1466A. As relevant here, Section 1466A(b)(1) criminalizes possession of "a visual depiction of any kind" that both "depicts a minor engaging in sexually explicit conduct" and "is obscene." 18 U.S.C. § 1466A(b)(1); *see id.* § 1466A(f)(2) (defining "sexually explicit conduct" by cross-referencing 18 U.S.C. § 2256(2)).[1] Section 1466A(c) provides that "[i]t is not a required element of any offense under this section that the minor depicted

[1] The definition includes, among other things, sexual intercourse, oral sex, masturbation, and lascivious exhibition of the anus, genitals, or pubic area of any person. 18 U.S.C. § 2256(2)(A). Material can constitute child obscenity without showing "sexually explicit conduct" under Section 2256(2) (*e.g.*, a man providing oral stimulation to a young girl's naked chest), and material can satisfy Section 2256(2) without being obscene, *see United States v. Villard*, 885 F.2d 117, 121-122 (3d Cir. 1989). Section 1466A only applies to material that satisfies both standards.

actually exist." And Section 1466A(b) and (d)(1)-(4) require that the substantive offense have a nexus with interstate commerce.

Section 1466A's obscenity element incorporates *Miller*'s obscenity test. *See, e.g.*, *United States v. Buie*, 946 F.3d 443, 445-446 (8th Cir. 2019); *supra* at 3. Because Section 1466A requires proof of obscenity, several courts of appeals have determined that the statute presents no First Amendment problem under *Free Speech Coalition*. *United States v. Arthur*, 51 F.4th 560, 568-569 (5th Cir. 2022); *United States v. Whorley*, 550 F.3d 326, 336-337 (4th Cir. 2008); *United States v. Schales*, 546 F.3d 965, 971-972 (9th Cir. 2008).

## II. OFFENSE CONDUCT AND DISTRICT COURT PROCEEDINGS[2]

In 2023, law enforcement learned that Anderegg used Stable Diffusion—an AI platform that allows users to generate images based on user-inputted text prompts—to produce hundreds of realistic-looking, obscene depictions of virtual children engaging in sexually explicit conduct. Op. 3-4; Op. Br. 4-7. He also sent three such images to a 15-year-old boy on Instagram. *Ibid.*

Some of the images depict young children lasciviously exhibiting their genitals. Op. 3-4; Op. Br. 4-7. Others show young children performing oral sex on adult men and adult males raping young children. *Ibid.* Anderegg created these images through the use of explicit text prompts—*e.g.*, "two cute nine year old gay emo boys enjoying

---

[2] The facts are presented in the light most favorable to the government. *See United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999).

a enormous throbbing penis"—to generate what he wanted, as well as "negative prompts" to avoid generating adults (and other things) he did not. *Ibid.*

Several other facts further show Anderegg's sexual interest in children. For example: he followed an Instagram user whose biography states, "great to meet on telegram and talk about young boy addiction !!"; he engaged in sexually explicit chats with minors; and a prepubescent minor known to Anderegg credibly accused Anderegg of sexual abuse. Op. Br. 4-7; Doc. 20 at 2-3.[3]

A grand jury charged Anderegg with production, distribution, and possession of an obscene visual depiction of a minor engaging in sexually explicit conduct—one count per offense—in violation of 18 U.S.C. § 1466A(a)(1), (b)(1), (d)(1), (d)(4); and transferring obscene material to a person under 16, in violation of 18 U.S.C. § 1470. App. 22-24. Before trial, the district court granted Anderegg's motion to dismiss the possession count on First Amendment grounds. Op. 5.

## III. THE PANEL OPINION

The government filed an interlocutory appeal. The panel affirmed.

1. Regarding *Stanley*, the court rejected the government's commerce distinction—no commerce there, and a required connection to commerce here—because (i) Section 1466A's "interstate-commerce requirement does not change the fact that the government is using § 1466A(d)(4) to punish Anderegg for possessing obscene material in the home"; (ii) Supreme Court precedent holding that *Stanley* does not

[3] The State of Wisconsin is prosecuting Anderegg for this hands-on offense. No. 2024CF000185. The case is pretrial and will likely remain stayed pending resolution of this case.

apply to things like importing or distributing obscene materials is inapposite because it did not "expressly address[] in-home possession in and of itself"; and (iii) "the obscene materials in *Stanley* … almost certainly moved in interstate commerce" and "this did not matter" to the Court there. Op. 16-17 (quotation marks omitted). The panel also "hesitate[d] to rely on" Section 1466A(d)(4)'s interstate-commerce requirement because it is "likely less substantive and more jurisdictional." *Id.* at 17 n.5.

The court also rejected the government's argument that *Stanley* applies only to obscenity depicting adults, "see[ing] no basis to read *Stanley* in such a limited fashion." Op. 18-19. And the court rejected the government's child-protection arguments—which were offered as basis to distinguish *Stanley*—not on their merits or their gravity, but because they mirrored arguments that *Free Speech Coalition* (which did not involve obscene material) rejected. *Id.* at 19-24.

Although the court concluded that its hands were tied by *Stanley* and *Free Speech Coalition*, the panel expressed significant unease with the result. Op. 3, 23.

2. Judge Lee concurred in his own majority opinion, joined by Judge Kolar. Op. 25-27. He explained that although "this case is controlled by *Stanley* and *Free Speech Coalition*," the "prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance," "[t]he stakes are high," and Supreme Court guidance would be useful. *Id.* at 25-27. He noted that offenders can use AI to generate child sexual abuse material (CSAM) that "is virtually indistinguishable from CSAM created through the physical abuse of a child." Op. 25

(quotation marks omitted). He discussed Justice Thomas and Justice O'Connor's *Free Speech Coalition* concurrences, which forecast that technological advancements might impede the government's ability to enforce the child pornography laws, and he noted, "[a]ccording to some experts, that day may have arrived." *Id.* at 25-26.

## ARGUMENT

### I. THE PANEL'S DECISION IS WRONG.

#### A. Anderegg does not have a First Amendment right to use interstate commerce in furtherance of his possession of obscene images of AI-generated children engaging in sexually explicit conduct.

In holding that "the facts of this case fall within the bounds of *Stanley*," Op. 19, the panel overread *Stanley* and underread numerous Supreme Court cases that unanimously point the other way.

1. *Stanley* involved (i) obscenity depicting *adults*, (ii) a state justification resting primarily on the "weak" and "paternalistic" need to protect adults from the supposed harms of viewing obscenity depicting adults, and (iii) "mere private possession" that lacked any connection with interstate commerce. *See supra* at 3-4. Section 1466A(b)(1) as applied here differs in every respect: (i) it applies only to obscene depictions of *children* (here, young, virtual children) engaging in sexually explicit conduct, (ii) it is justified by the compelling need to protect real kids from sexual exploitation and abuse, and (iii) it criminalizes Anderegg's use of interstate commerce in furtherance of his in-home possession and therefore cannot reach "mere private possession."

These distinctions are constitutionally dispositive. The Supreme Court has repeatedly directed that its opinions must be read in the context of the issue

presented for resolution and that doing otherwise risks applying its opinions too broadly. *See, e.g.*, *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 278 (2023); *Int'l Brotherhood of Teamsters v. Hanke*, 339 U.S. 470, 480 n.6 (1950) (plurality op.); *Cohens v. Virginia*, 19 U.S. (6 Wheat) 264, 399-400 (1821) (Marshall, C.J.); Op. Br. 27-29; Reply Br. 3-12. Even broad-on-the-surface language should not necessarily be read for all it could conceivably be worth; context matters. *See Olivier v. City of Brandon*, 607 U.S. 552, 565-566 (2026) (prior case "did not consider" issue presented and broad language in prior case "was not meant to address" new issue); *see also Brown v. Davenport*, 596 U.S. 118, 141 (2022) (cautioning against reading opinions the way courts read statutes).

The panel made precisely this mistake here. The panel endorsed an overly broad reading of *Stanley* without regard to the actual issue there: the "mere private possession" of adult obscenity, with no required commerce connection, and as measured against Georgia's "weak" and "paternalistic" justification of the statute. "[R]espect for past judgments also means respecting their limits." *Brown* 596 U.S. at 141. The panel's decision falls short of this directive.

2. This analytical mistake is especially clear given the decades of post-*Stanley* Supreme Court precedent—which binds this Court no less than *Stanley* does—that unanimously points to Section 1466A(b)(1)'s constitutionality as-applied here.

First, the Supreme Court has cautioned that "*Stanley* was a narrow holding" that "should not be read too broadly," *Osborne*, 495 U.S. at 108, and that "rests" on an "explicitly narrow and precisely delineated privacy right," *12 200-Foot Reels*, 413 U.S.

at 127. The panel dislodged *Stanley* from its narrow and tightly circumscribed holding to apply it to a set of facts—commerce-connected possession of obscene depictions of children engaging in sexually explicit conduct—that differs in all material respects from *Stanley* and that *Stanley* did not confront or consider.

Second, the Supreme Court has described *Stanley* as applying to adult obscenity: "[W]e have held that the government may criminalize the possession of child pornography, even though it may not criminalize the mere possession of obscene material *involving adults*. Compare *Osborne* … with *Stanley* … ." *Williams*, 553 U.S. at 288-289 (emphasis added). The panel minimized this, stating that the language "is better understood to reflect the distinction [the Supreme Court's] cases have historically drawn between CSAM and *obscenity generally*." Op. 18 (emphasis added). But *Williams* did not say obscenity "generally"; it used the narrower and more circumscribed "obscene material involving adults." And given pre-*Williams* Supreme Court precedent explaining how narrow *Stanley* is, the "involving adults" qualifier from *Williams* is best understood as intentional.

Third, the Supreme Court has clarified that *Stanley* was largely a response to the "weak" and "paternalistic" interest offered by the state there. *Osborne*, 495 U.S. at 109-110. This case, though, rests on the compelling need to protect children, *see infra* at 16, not on any need to protect Anderegg from himself. That difference carries constitutional significance.

Fourth, the Supreme Court has explained that the compelling need to protect children from sexual exploitation entitles the government "to greater leeway in the

regulation of pornographic depictions of children," and the Court has "sustained legislation aimed at protecting the physical and emotional well-being of youth even when the laws have operated in the sensitive area of constitutionally protected rights." *Ferber*, 458 U.S. at 756-757. This principle—which was not at issue in *Stanley*—also counsels in favor of Section 1466A(b)(1)'s constitutionality here.

Fifth, the Supreme Court has held that *Stanley* does not apply to the transportation, receipt, distribution, or importation of obscene material, even in furtherance of private, in-home possession, and that the government retains broad power to regulate obscenity. *See supra* at 4. Because application of Section 1466A(b)(1) here will require an interstate-commerce connection—and therefore cannot criminalize "mere private possession" under *Stanley*—these cases also undermine the panel's decision.

There are more errors still. The panel discounted the Supreme Court's post-*Stanley* commerce-connected obscenity cases because they did not "expressly address[] in-home possession in and of itself." Op. 16. But *Stanley* also did not "expressly address" the commerce-connected possession of obscene depictions *of children* engaging in sexually explicit conduct, where that prohibition rests on compelling child protection interests. In fact, *Stanley* noted that the possession there presented no risk that the material "might fall into the hands of children" or harm the public generally. *See Stanley*, 394 U.S. at 567. The same cannot fairly be said here. *See infra* at 16.

The panel minimized the required interstate-commerce element here, noting that the films in *Stanley* "almost certainly moved in interstate commerce" and "this did not matter to the Supreme Court" there. Op. 17. But *Stanley* said nothing about any implications of a commerce connection, and lower courts are not bound by what they think may have mattered to the Supreme Court had the Court addressed a different statute, with different elements and equities, and subject to different arguments. *See generally Webster v. Fall*, 266 U.S. 507, 511 (1925); Bryan A. Garner et al., The Law of Judicial Precedent 47, 84-85 (2016).

Moreover, *Stanley* explicitly contemplated that "other types of printed, filmed, or recorded materials" might not receive the same protection because "compelling reasons may exist for overriding the right of the individual to possess" them. *Stanley*, 394 U.S. at 568 n.11. This case involves precisely such "material[]" and "compelling reasons."

### B. *Free Speech Coalition* is inapposite because Section 1466A applies only to obscene—and therefore constitutionally unprotected—speech.

The government argued that *Stanley* does not give Anderegg a First Amendment right to possess obscene AI-generated images of children engaging in sexually explicit conduct in part because Section 1466A(b)(1)—unlike the statute at issue in *Stanley*—is critical to advancing the government's compelling interest in protecting real children from sexual exploitation and abuse. Op. Br. 14-22; Reply Br. 14-17. The panel did not dispute the reality, gravity, or compelling nature of these risks. But the court decided that *Free Speech Coalition*—which neither addressed nor involved a

statute reaching only obscene speech—foreclosed it from relying on these considerations to uphold Section 1466A(b)(1)'s constitutionality here. This was error.

*Free Speech Coalition* involved a statutory definition of "child pornography" that reached material that showed no actual child and that was not obscene. 535 U.S. at 239-256. Upholding the statute, therefore, would have required the Supreme Court to create "an additional category of unprotected speech": non-obscene images of non-real children (or real, youthful-looking adults). *Id.* at 246. In invalidating the statute on First Amendment grounds, the Court determined that the government's child-protection arguments were insufficient to unprotect this otherwise-protected speech. *Id.* at 256 (statute "covers materials beyond the categories recognized in *Ferber* and *Miller*" and the government's child-protection arguments "in support of limiting the freedom of speech" were unavailing).

But that determination is wholly inapposite here because Section 1466A(b)(1) applies only to speech that is obscene, and therefore unprotected under the First Amendment. The government is not asking this Court to recognize a new category of unprotected speech; instead, the government's child-protection arguments are offered as one of the key reasons why this case does not fall within *Stanley*'s narrow confines. *Free Speech Coalition* says nothing about how child-protection interests bear on a statute, like Section 1466A, that reaches only obscene, and therefore only unprotected, speech. Because the Supreme Court did not address, much less reject, the government's arguments in that context, *Free Speech Coalition* does not foreclose this Court from crediting these child-protection arguments and relying on them to

distinguish this case from *Stanley*. The panel was therefore wrong to conclude that "the justifications [the government] offers here for proscribing the possession of *obscene* virtual CSAM were all expressly discussed and rejected by the Supreme Court in *Free Speech Coalition*." Op. 20 (emphasis added).

Nor was the lack of an obscenity element in *Free Speech Coalition* some small point. The Court was deeply concerned that the statute there would apply to material having artistic or literary value, such as "Romeo & Juliet" and the movies "Traffic" and "American Beauty." 535 U.S. at 246-248. The Court wanted to preserve what it viewed as society's "empathy and enduring fascination with the lives and destinies of the young." *Id.* at 248; *see ibid.* And the Court worried that if these works or the many like them "contain a single graphic depiction of sexual activity within the statutory definition, the possessor of the film would be subject to severe punishment without inquiry into the work's redeeming value." *Ibid.* But Section 1466A(b)(1)'s obscenity element—which requires proof, among other things, that the material lacks serious artistic or literary value—solves this problem entirely. The Court's concerns in *Free Speech Coalition* therefore do not apply to Anderegg's obscene images showing young children getting raped, providing oral sex, and lasciviously exhibiting their genitals.

* * *

The panel wrote that upholding Section 1466A(b)(1)'s application here would invite "anarchy to prevail within the federal judicial system," Op. 23 (quotation marks omitted), and that only the Supreme Court can overrule its own precedent, *id.* at 3. Of course this Court must faithfully apply *Stanley*. But this case presents the

antecedent, threshold question of what rule this Court should derive from *Stanley*. And the answer to *that* question—giving due consideration to *Stanley* and post-*Stanley* Supreme Court precedent, and interpreting *Stanley* consonant with the Supreme Court's repeated direction about how to interpret its precedent—is that *Stanley* protects the mere in-home possession of obscene material depicting adults, not the commerce-connected possession of obscene images of AI-generated children engaging in sexually explicit conduct. The panel, like courts before it, "gave *Stanley* too wide a sweep." *Reidel*, 402 U.S. at 355. The Court should correct that error.

## II. THE ISSUE IS EXCEPTIONALLY IMPORTANT.

The issue presented here is exceptionally important. AI technology is rapidly becoming more prevalent, easier to use, and increasingly capable of producing photorealistic, obscene depictions of children engaging in sexually explicit conduct. This, in turn, raises a wide-ranging set of gravely serious child-safety concerns, including the danger that such AI-generated child sexual abuse material will improve offenders' ability to groom children, normalize the sexual abuse of children, impede rescue efforts of actual children who are being sexually victimized, grow the marketplace for material showing actual children, and impair the government's ability to prosecute offenders who possess material depicting actual children. Op. Br. 14-22; Reply Br. 14-17.[4]

[4] The concurring opinion stated that "a major dataset used for training image-generating AI contained hundreds of CSAM images." Op. 27. As the government noted in district court, "the original dataset of images on which Stable Diffusion was trained … apparently contained suspected child pornography." Doc. 64 at 45 n.19.

## CONCLUSION

The Court should grant the petition for rehearing en banc or panel rehearing.

Respectfully submitted,

A. TYSEN DUVA
Assistant Attorney General

JOSH A. GOLDFOOT
Deputy Assistant Attorney General

WILLIAM G. CLAYMAN
Appellate Section

s/ ROSS B. GOLDMAN
ROSS B. GOLDMAN
Acting Deputy Chief &
Senior Appellate Counsel
Criminal Division
Child Exploitation & Obscenity Section
U.S. Department of Justice
1301 New York Ave. NW
Washington, DC 20530
(202) 532-4153

October 8, 2026

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 40(d) because it contains 3,897 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements set forth in Federal Rule of Appellate Procedure 32(a)(5) and Seventh Circuit Rule 32 and the type-style requirements set forth in Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 12-point Century Schoolbook font, with 11-point Century Schoolbook font in footnotes.

s/ Ross B. Goldman